Teresa Ann DAVIS *v.*
Vandell BLAND, d/b/a Bland Law Office

05-1238                                    238 S.W.3d 924

Supreme Court of Arkansas
Opinion delivered September 14, 2006

*Harry McDermott*, for appellant.

DONALD L. CORBIN, Justice. This is an attorney malpractice case in which Appellant Teresa Ann Davis sued her former attorney Vandell Bland, d/b/a Bland Law Office, for failing to perfect her appeal of a child-support award from Washington County Circuit Court. As this appeal involves attorney malpractice, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(5). We affirm.

The instant action stems from a paternity action in which Corliss Williamson was determined to be the biological father of Davis's minor son, C.W. Prior to the determination of paternity, Williamson voluntarily paid $5,000 per month in child support. Davis requested that Williamson be required to pay the fifteen percent of his monthly income as established in the Arkansas Family Support Chart. Davis also requested back child support. On

September 11, 2002, the paternity court entered a final order determining that Williamson's net monthly income was $162,970.69, but setting child support at $3,930.82 per month. In so ruling, the paternity court determined that it was necessary to deviate from the fifteen percent as set forth in the family support chart, as C.W.'s actual needs totaled $3,930.82 per month. Moreover, the paternity court noted it was not in C.W.'s best interest to award him an amount of support that so greatly exceeded his monthly needs.

Following entry of the paternity court's order, Davis retained Bland to represent her on appeal. On October 9, 2002, Bland filed a notice of appeal naming Williamson as Bland's client and purporting to appeal on his behalf. Realizing his mistake, Bland filed an amended notice of appeal on October 11, 2002, correctly naming Davis as his client and as the appealing party.

On January 7, 2003, Bland filed a motion requesting to extend the time to file the transcript. That same day, the trial court held a telephone conference to discuss the motion, and despite Bland's failure to participate in that telephone conference, the trial court granted the motion and extended the time to file the transcript until April 9, 2003. However, the trial court's order granting the extension was not entered until January 8, 2003, ninety-one days after the filing of the first notice of appeal on October 9, 2002. Thus, when Bland attempted to file the record with the clerk of this court, the clerk refused to accept it. Bland subsequently filed a motion for rule on clerk and attempted to blame the trial court and its clerk for failing to timely file the extension order. This court denied the motion for rule on clerk, holding that it was Bland's responsibility, and no one else's, to perfect Davis's appeal.

Davis filed the instant action for malpractice on July 16, 2004, arguing that Bland's failure to perfect her appeal constituted negligence because, if her appeal had proceeded, the trial court's award of child support would have been reversed. Davis sought damages in an amount in excess of $1,000,000, arguing that such an amount represented what the appellate court would have awarded her in back and future child support. Bland, in turn, filed a third-party action against Richard Fourt, the paternity court's court reporter, alleging that he was to blame in failing to timely file the court's order of extension.

The circuit court entered an order dismissing the complaint against Bland on October 5, 2005.[1] In a letter opinion, the circuit court reasoned that despite Bland's failure to perfect Davis's appeal, which constituted attorney malpractice, Davis was unable to prove that but for Bland's negligence, she would have prevailed on appeal. In so ruling, the court noted that it could not conclude that the paternity court abused its discretion or acted thoughtlessly or without due consideration when it entered the order for child support. Davis filed a timely notice of appeal, and the issue is now before this court.

On appeal, Davis argues that the circuit court correctly determined that Bland committed malpractice, but erred in dismissing her complaint against him on the basis that she failed to prove that she would have prevailed on appeal. According to Davis, the paternity court erred in setting child support at $3,930.82 per month in light of Williamson's monthly net income and monthly expenditures on himself and his wife. Davis further argues that the paternity court erred in determining that any amount of support awarded that exceeded C.W.'s actual needs would be contrary to this court's case law that prohibits an accumulation of capital for the child. Finally, Davis argues that the paternity court's award was in error because a father should have to provide the same standard of living for his minor child that he himself enjoys.

An attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of his or her client. *Southern Farm Bureau Cas. Ins. Co. v. Daggett*, 354 Ark. 112, 118 S.W.3d 525 (2003). In order to prevail under a claim of legal malpractice, a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that this conduct proximately caused the plaintiff damages. *Id.*; *Anthony v. Kaplan*, 324 Ark. 52, 918 S.W.2d 174 (1996). In order to establish damages and proximate cause, the plaintiff must show that, but for the alleged negligence of the attorney, the result in the underlying action would have been different. *Mack v. Sutter*, 366 Ark. 1, 233 S.W.3d 140 (2006); *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003). To do this, Davis must prove the merits of the child-support issue within the context of the attorney-malpractice case. *Id.* Bland did not file a reply brief in the instant case.

---

[1] The trial court also dismissed the third-party complaint against Fourt. That action is not subject to the present appeal.

In reviewing this issue, it is necessary for the trial court to act as an appellate court would act and review the decision under the same standard the appellate court would use. *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998). It is well settled that the matter of proximate cause for failure to file an appeal is a question of law to be determined by a judge, not a jury. *Id.*; *see also Daggett*, 354 Ark. 112, 118 S.W.3d 525.

As the circuit court noted, Bland failed to submit any rebuttal evidence in response to the affidavit of Davis's expert, Bob Estes, a licensed attorney, that Bland's failure to perfect Davis's appeal constituted a breach of Bland's duty to exercise a reasonable degree of care in representing Davis. Thus, we agree with the circuit court's conclusion that Bland's failure to perfect the appeal constituted legal malpractice. Our analysis does not end here, however. In order to prevail in the instant action, Davis must still prove that Bland's negligence proximately caused Davis damages. The question then before us is whether the trial court correctly determined that Davis was not damaged, as she failed to prove that she would have prevailed on appeal. To answer this question, we must now review the applicable case law with regard to issues of child support.

The amount of child support lies within the discretion of the court and the court's findings will not be disturbed on appeal, absent a showing of an abuse of discretion. *Smith v. Smith*, 341 Ark. 590, 19 S.W.3d 590 (2000). The Arkansas General Assembly has provided that the appropriate method for determining the amount of child support to be paid by the noncustodial parent is by reference to a family support chart. *Id.* Arkansas Code Annotated § 9-12-312(a)(2) (Repl. 2002) states:

> In determining a reasonable amount of support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the family support chart, shall the presumption be rebutted.

In order to ensure that the support amounts are appropriate for child-support awards, the family support chart is revised every

four years by a committee appointed by the Chief Justice of this court. *In Re: Guidelines for Child Support*, 314 Ark. Appx. 644, 863 S.W.2d 291 (1993) (*per curiam*). The committee is also responsible for establishing the criteria to be evaluated when deviating from the use of the chart amount. *Id.*

The family support chart is more accurately identified as Section VII of Supreme Court Administrative Order No. 10, *In Re: Administrative Order No. 10: Arkansas Child Support Guidelines*, 347 Ark. Appx. 1064 (2002) (*per curiam*), which became effective on February 11, 2002, and applies to the child-support award at the crux of this case. Administrative Order No. 10 sets out the definition of income for child-support purposes and the manner of calculation of support. It also requires the parties to execute affidavits of financial means and lists factors the court should consider when determining support at variance to the chart. Although the court must consider the chart, it does not have to use the chart amount if the circumstances of the parties indicate another amount would be more appropriate. *Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000); *Stewart v. Winfrey*, 308 Ark. 277, 824 S.W.2d 373 (1992); *see also* Ark. Code Ann. § 9-14-106 (Repl. 2002). Any deviations from the chart amount, however, must include written findings stating why the chart amount is unjust or inappropriate. *Smith*, 341 Ark. 590, 19 S.W.3d 590. In sum, the court may grant more or less support if the evidence shows that the needs of the child require a different level of support. *Id.*

Section V of Administrative Order No. 10 sets forth the following factors to be considered when deviating from the amount set by the chart: food; shelter and utilities; clothing; medical expenses; educational expenses; dental expenses; child care (including day care or other expenses for supervision of children necessary for the custodial parent to work); accustomed standard of living; recreation; insurance; transportation expenses; and other income or assets available to support the child from whatever source. The guidelines then list what are called additional factors. They are: the procurement and maintenance of life insurance, health insurance, dental insurance for the children's benefit; the provision or payment of necessary medical, dental, optical, psychological or counseling expenses of the children; the creation or maintenance of a trust fund for the children; the provision or payment of special education needs or expenses of the child; the provision or payment of day care for a child; the extraordinary time spent with the noncustodial parent, or shared

or joint custody arrangements; the support required and given by a payor for dependent children, even in the absence of a court order; and where the amount of child support indicated by the chart is less than the normal costs of child care.

■ The Child Support Guidelines provide that when the payor's income exceeds that shown on a table included in the chart, the trial court is directed to apply a percentage of the payor's weekly or monthly income to establish a presumptively reasonable level of support. At the time of the instant paternity action, the presumptive amount based on the chart would have been fifteen percent of Williamson's monthly income. Based upon the trial court's determination that Williamson's net monthly income was $162,970.69, the presumptive amount of child support pursuant to the family support chart would have been $24,445.60. The paternity court, however, determined that such an amount was neither reasonable nor in the best interest of C.W. Upon reviewing the paternity court's extremely thorough order, we cannot say that the paternity court abused its discretion in this regard.

The order awarding child support in this case detailed the method utilized by the paternity court in arriving at the amount of Williamson's monthly income. Moreover, the order specifically reviewed each of the monthly expenses incurred by Davis in connection with support of C.W. and determined whether such expenses were reasonable. The paternity court also pointed out that Davis, who has a master's degree in education and was pursuing a second master's degree, has the ability to earn at least $36,000 per year, which must be considered as other income available to support C.W., as it is both parents' obligation to support their child. The paternity court further noted that Williamson was responsible for maintaining insurance on C.W., as well as paying all costs not covered by insurance. In addition, the trial court noted that Williamson maintains a $4,000,000 life insurance policy, which is an asset of an irrevocable trust, with C.W. entitled to thirty percent of the trust upon Williamson's death, and also maintains an educational trust for the benefit of C.W. that at the time of the hearing held a value of $93,458. After considering numerous factors, the paternity court reasoned:

> To apply a straight 15% of Mr. Williamson's net monthly income would clearly be unjust, inappropriate and not in the best interest of C.W. *First*, the actual needs of C.W. per month are $3,930.82 as analyzed above. Not only does that monthly figure

meet all of C.W.'s actual needs, it allows him to enjoy a very comfortable standard of living that he has enjoyed since his birth while living with his mother. *Second*, granting Ms. Davis the straight 15% of Mr. Williamson's net monthly income, would result in monthly child support in the amount of $24,445.60 and could not be totally expended each month to provide for the actual monthly needs of C.W., age seven, but would be used for Ms. Davis to accumulate wealth and capital for C.W.'s benefit upon his majority. A grant of child support in the amount of $24,445.60 would result in a redistribution of wealth from Mr. Williamson to Ms. Davis, which is unjust and inappropriate, and prohibited under *Smith v. Smith*, 341 Ark. 590, 19 S.W.3d 590 (2000).

The paternity court went on to conclude that awarding child support in the amount of $24,445.60 per month was not in the best interest of C.W. According to the paternity court, granting an amount in excess of that needed to cover the child's reasonable needs would not impart a work ethic on C.W., nor was it in his best interest to give him everything that he wanted.

Upon review of the paternity court's order, it is apparent that the paternity court adhered to the guidelines of Administrative Order No. 10 when deviating from the presumptive amount of child support. Moreover, the paternity court analyzed the needs of C.W. and set the award of support at an amount that would cover those needs. Davis's argument that the court misapplied *Smith*, 341 Ark. 590, 19 S.W.3d 590, is immaterial. Nothing in Administrative Order No. 10 requires the noncustodial parent to pay excess support so that the custodial parent can accumulate such amounts for the benefit of the minor child. As we stated in *Smith*, the purpose of child support is to provide for the reasonable needs of the child. Thus, any argument by Davis that the paternity court misconstrued our holding in *Smith* is unavailing.

Also unavailing is Davis's reliance on *Ceola v. Burnham*, 84 Ark. App. 269, 139 S.W.3d 150 (2003), for the proposition that C.W. is entitled to a standard of living identical to his father's. In *Ceola*, the court of appeals rejected the appellant's argument that the trial court's order of support based on a percentage of his income was excessive. In discussing the circuit court's award, the court of appeals noted that one of the bases for the award was the reasoning that the minor child was entitled to a lifestyle *similar* to the one enjoyed by the father. Nowhere in the opinion, though, is there a holding that requires child support be calculated to provide a child with a standard of living identical to the noncustodial

parent's standard of living. As the support guidelines state, an award of support should consider an "[a]ccustomed standard of living." *In Re: Administrative Order No. 10,* 347 Ark. Appx. at 1070. This factor was considered by the paternity court who reasoned that C.W. would continue to enjoy a comfortable standard of living based on the support awarded. In sum, we cannot say that paternity court abused its discretion in awarding child support in the amount of $3,930.82.

Having determined that Davis would not have prevailed on her appeal of the child-support award, we affirm the circuit court's order dismissing Davis's malpractice action against Bland.

Affirmed.