2010 Ark. 9

**Kathy Travis GILBOW, Appellant**

v.

**Patrick TRAVIS, Appellee.**

No. 09–438.

Supreme Court of Arkansas.

Jan. 14, 2010.

George Spence, Bentonville, for appellant.

David R. Matthews, Sarah L. Waddoups, Rogers, for appellee.

ELANA CUNNINGHAM WILLS, Justice.

This court granted appellant Kathy Travis Gilbow's petition to review the court of appeals's decision in *Gilbow v. Travis*, 2009 Ark. App. 254, 2009 WL 936945, which she contends is inconsistent with *Smith v. Smith*, 341 Ark. 590, 19 S.W.3d 590 (2000). As an issue of first impression, this case requires us to determine whether a trial court has the authority to order that an arrearage resulting from a retroactive increase in child support be placed in an account in the noncustodial parent's name to provide for the future needs of the children.

Gilbow and appellee Patrick Travis were divorced in 1999. Gilbow received custody of the parties' two children, and Travis was ordered to pay alimony for five years and child support. In November 2006, Travis filed a petition in the Benton County Circuit Court seeking an order to enforce mid-week visitation rights with the children. Gilbow filed a $\mathsf{L}_2$counter-petition on December 20, 2006, seeking an increase in child support. On October 29, 2007, the circuit court entered an order that granted Gilbow's petition for an increase in child support, increasing the amount of support from $6,500 to $10,317 per month. The amount awarded was a downward deviation from the child support chart provided by Arkansas Supreme Court Administrative Order No. 10, and disallowed certain items in Gilbow's "proposed budget." The circuit court awarded the increase effective as of the date of the petition, which resulted in a ten-month arrearage in the amount of $38,170.00.

Travis filed a motion for a new trial, asserting that the increase in child-support payments should have been effective as to the date of the October 29, 2007 order, rather than retroactive to the date Gilbow filed her petition. Alternatively, at the end of his brief in support of the motion, Travis requested that the circuit court order the retroactive award be placed in a trust or "college fund" to be maintained by himself, or under court control with funds to be dispersed upon court approval. Gilbow responded to Travis's motion by as-

serting that Travis had not stated any grounds for a new trial and that the award was properly made retroactive.

The circuit court entered a November 30, 2007 amended order, again finding that the increase in child support should be retroactive to the date Gilbow filed her petition. But in order to avoid a "windfall" to "Gilbow's household," the circuit court ordered Travis to place the $38,170 arrearage into an account "to address any needs of the children that may arise between now and the time the youngest child reaches the age of 18." The amended order further stated that, although the account would be held in Travis's name, he must "provide an accounting upon request to Ms. Gilbow, and proof that the account is still intact."

In her appeal from the original and amended orders to the court of appeals, Gilbow argued that the circuit court erred by (1) ordering that the child support arrearage be placed into an interest-bearing account controlled by Travis that she could not access; and (2) deviating from the child-support chart provided by Administrative Order No. 10 by refusing to consider Gilbow's proposed budgeting for $3,000 per month for "mom care," which "would allow her to work part-time or not at all," in order for her to be "a stay at home mother for the parties' children." The court of appeals affirmed the circuit court's decision to create the account to hold the retroactive increase but reversed the portion of the trial court's order that required Travis to set up the account in his name. Instead, the court of appeals instructed that the trial court on remand must modify its order to require that an interest-bearing account be created in Gilbow's name and "require the chosen financial institution to file with the clerk of the circuit court an agreement not to permit any withdrawal from the account except on authority of the circuit court's order." *Id.* The court of appeals affirmed the circuit court's deviation from the child-support chart, holding that there was no abuse of discretion on that point.

In her petition for review, Gilbow specifically asserts that the court of appeals's decision "approving the establishment of a fund by the circuit court to remain under the control of the circuit court," effectively created a guardianship contrary to "the principals of *Smith.*" Further, she contends that "our system does not provide for advance court management" of child support funds, which are required to be "spent by the custodial parent to benefit the minor," and, accordingly, the actions of the circuit court and court of appeals "have changed the nature of the arrearage of child support from child support to something else."

Upon a grant of a petition for review, we consider the case as though it had originally been filed in this court. *Tucker v. Office of Child Support Enforcement,* 368 Ark. 481, 247 S.W.3d 485 (2007). The standard of review for an appeal from a child-support order is de novo, and this court will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Ward v. Doss,* 361 Ark. 153, 158, 205 S.W.3d 767, 770 (2005). In reviewing a circuit court's findings, the appellate court gives deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* As a rule, when the amount of child support is at issue, this court will not reverse the chancellor absent an abuse of discretion. *Id.* However, a circuit court's conclusion of law is given no deference on appeal. *Id.*

The general assembly amended Ark. Code Ann. § 9–14–107 by enactment of Act 337 of 2003 to provide that, "Any modification of a child support order that

is based on a change in gross income of the noncustodial parent shall be effective as of the date of filing a motion for increase or decrease in child support unless otherwise ordered by the court." Ark.Code Ann. § 9–14–107(d) (Supp.2009). Here, the circuit court ordered the increase to be retroactive to the date Gilbow filed her petition. However, citing *Smith, supra,* Gilbow contends that "there is no basis in the statutes or guidelines" for the circuit court to order the retroactive increase in child support be deposited in an interest-bearing account. Gilbow further asserts that "establishing such a fund is contrary to the purposes of the child support statute and guidelines, which is to provide for the needs of the child," and that the effect of the circuit court's order was to find "a particular amount of support was appropriate, and then deny it."

In *Smith,* the noncustodial parent brought an appeal that challenged the amount of child support awarded by the trial court. He also argued that the trial court erred by refusing to order that a trust be created, and for a portion of the awarded child support to be placed in the trust and set aside for the future needs of the child. This court affirmed the trial court, holding that there was no "authority to designate portions of the child-support award for that purpose," and stated that "child support is not to provide for the accumulation of capital by children, but is to provide for their reasonable needs." *Smith,* 341 Ark. at 596, 19 S.W.3d at 594–95.

■ Although this case involves an *increase* in child support payments and retroactive award, rather than an *initial award* of child support, that is a distinction without a difference. As in *Smith,* there is no authority that would allow a court to order that a retroactive amount resulting from an increase in child support be placed in an interest-bearing account. Accordingly, we reverse the circuit court's order on this point and remand for disposition consistent with this opinion.

■ For her second point on appeal, Gilbow argues that the circuit court erred in setting Travis's child support payments "at variance" with the family support chart—"Child Support Guidelines"—delineated by Section VII of Supreme Court Administrative Order No. 10. The amount of child support lies within the discretion of the court and the court's findings will not be disturbed on appeal, absent a showing of an abuse of discretion. *Smith, supra.*

Arkansas Code Annotated § 9–12–312(a)(2) (Repl.2008) provides that

> In determining a reasonable amount of support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the family support chart, shall the presumption be rebutted.

Similarly, Section 1 of Administrative Order No. 10 (2009) states that

> It is a rebuttable presumption that the amount of child support calculated pursuant to the most recent version of the Family Support Chart is the amount of child support to be awarded in any judicial proceeding for divorce, separation, paternity, or child support. The court may grant less or more support if the

evidence shows that the needs of the dependents require a different level of support.

*See also Akins v. Mofield,* 355 Ark. 215, 132 S.W.3d 760 (2003) (holding that the presumption under Administrative Order No. 10 applies to retroactive child support).

In *Davis v. Bland,* 367 Ark. 210, 217, 238 S.W.3d 924, 929 (2006), we affirmed a downward deviation from the child-support guidelines where the chart amount for support of a seven-year-old child of over $24,000 a month would "result in a redistribution of |₇wealth," which was "unjust and inappropriate" and "prohibited by" *Smith, supra.* We stated that

> Although the court must consider the chart, it does not have to use the chart amount if the circumstances of the parties indicate another amount would be more appropriate.... [T]he court may grant more or less support if the evidence shows that the needs of the child require a different level of support.

*Id.* at 215, 238 S.W.3d at 927. But, "Any deviations from the chart amount [ ] must include written findings, stating why the chart amount is unjust or inappropriate." *Id.*

Here, Gilbow acknowledges that the circuit court considered the family support chart and her affidavit describing her financial need, "as well as a list of other items [Gilbow] testified she wanted to provide for the children," in making its increased monthly support determination. She argues, however, that the circuit court abused its discretion in rejecting her "allowance in her proposed budget" for "mom care" in the amount of $3,000 per month. According to Gilbow, "In seeking an allowance for 'mom care' to allow her to work part time or not at all, [she] was not seeking something exotic, at least as far as these parties were concerned." Instead,

her requested "allowance" was intended to "support the lifestyle the children of the parties had at one time."

■ In its October 29, 2007 order granting Gilbow's petition for monthly child support increase, the circuit court found that the presumptive amount of monthly support provided by family support chart—$16,252 per month—was rebutted based on "credible evidence presented to the [c]ourt, the testimony, the exhibits, [and] the needs of the children." |₈Specifically, the circuit court stated as follows:

> According to the figures calculated by the [c]ourt, it appears that Dr. Travis' income since the last hearing has increased about 59 percent. In the event the Court increased the Plaintiff's child support by that amount, it would be $11,016.19 monthly. The [c]ourt still believes that is somewhat greater than [ ] what is needed to meet the needs of the children. The [c]ourt then looked at the Plaintiff's Exhibit 7, which is basically the Plaintiff's wish list in order to place her in a position to provide for the children and her home, those things that are more in line with [what] is provided to them in Dr. Travis' home. The [c]ourt deducted the $3,000.00 the Plaintiff had on there for mom care, because the [c]ourt doesn't think that is appropriate, that would be more in the nature of an alimony payment. In addition, the Court deducted the $1,000 a month for the desire to put in a family pool, because the [c]ourt does not feel that is appropriate.... In addition, the [c]ourt reduced the wish list by $500 a month that she pays on a rental house that the [c]ourt is having difficulty justifying. After all calculation, the [c]ourt determined an appropriate amount of child support would be $10,317.00 per month, resulting in an increase substantially from the $6,500.00 per month presently in place.

The circuit court did not abuse its discretion in deviating from the child support chart by disallowing Gilbow's request for a $3,000 allowance in order for her to work part time or not at all. The purpose of child support is to provide for children's "reasonable needs." *Smith,* 341 Ark. at 596, 19 S.W.3d at 595. Considering the child support chart, evidence, testimony, and exhibits, the trial court determined that the increase to $10,317 per month was "reasonable," and allowed "both homes to provide for the children, not in identical manner, but in like manner, for the children." *See id.* (rejecting an argument that a child was "entitled to a standard of living identical to his father's"). Accordingly, under the circumstances of this case, we cannot conclude that the circuit court abused its discretion in deviating from the chart amount.

Circuit court reversed and remanded in part; affirmed in part. Court of appeals reversed in part; affirmed in part.

BOWEN, J., not participating in final opinion.