2011 Ark. App. 354

**Dana K. KEMP, Appellant**

v.

**Kevin L. KEMP, Appellee.**

**No. CA 10–1132.**

Court of Appeals of Arkansas.

May 11, 2011.

Rehearing Denied June 22, 2011.

Katherine Elizabeth Blackmon, Little Rock, for appellant.

H. Sam Hilburn and Lauren White Hamilton, North Little Rock, for appellee.

DAVID M. GLOVER, Judge.

Appellant Dana Kemp and appellee Kevin Kemp were married on July 31, 1993, and divorced on July 7, 2005. Three children were born to the marriage—K.K. (dob 7–3–97), L.K. (dob 5–25–00), and G.K. (dob 9–20–04). The parties entered into a custody, support, and property-settlement agreement that was incorporated but not merged into the divorce decree. Their agreement provided, in pertinent part, that they would share joint custody of the children, with Dana being the children's primary custodian. Based upon Kevin's income at the time of the divorce, he agreed to pay Dana $4500 per month in child support. He also agreed to pay one-half of the cost for the children to attend private elementary and secondary schools, to be chosen by mutual agreement; to maintain medical and vision insurance and pay the premiums (unless Dana could obtain adequate health insurance for less, at which time he would reimburse her for the premiums); and to pay one-half of all medical, dental, orthodontic, vision, and mental-health expenses not covered by insurance. Kevin agreed to pay alimony to Dana of $2000 per month, beginning June 1, 2005, and continuing until September 1, 2009, with the alimony terminating immediately upon the death of either party or upon Dana's remarriage or cohabitation. Kevin agreed to maintain an insurance policy on his life with Dana named as beneficiary in an amount sufficient to pay Dana the present value of all current and future alimony and child-support payments owed to Dana at the time of his death. The parties later agreed (in an order filed on February 28, 2006) that Kevin would not abate his child-support payments during his extended visitation periods.

On January 23, 2009, the parties entered into an agreed protective order by which Kevin would share his financial information with Dana; as a result of that information, the parties entered into yet another agreed order providing that based on Kevin's 2007 tax return, he would pay child support in the amount of $9210.52 per month effective February 1, 2009; that he would pay Dana $20,000 as settlement for child-support arrearages; and that alimo-

ny would terminate effective December 31, 2008, in the "spirit of compromise."

In April 2009, Dana filed a motion to modify Kevin's child-support obligation. She alleged that Kevin's income had increased, constituting a material change in circumstances, and that his child-support obligation should be increased to accurately reflect his income with respect to the child-support guidelines. Kevin admitted that his income had increased, but he denied that his child-support obligation should be increased. After a hearing on this issue, the trial court denied Dana's motion to increase child support, leaving it at the agreed-upon level of $9210.52 per month that was effective February 1, 2009. Dana now brings this appeal, arguing that the trial court erred in deviating from the chart amount based upon its perception that the "actual needs" of the children were exceeded by the chart amount. We affirm the trial court's decision.

The amount of child support awarded by the trial court lies within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion; however, reference to the family-support chart is mandatory. *Schumacher v. Schumacher*, 66 Ark.App. 9, 986 S.W.2d 883 (1999). A modification in the amount of child support to be paid is required to be based upon a change in circumstances, and the party seeking the modification has the burden of showing a change in circumstances sufficient to require modification. *Payton v. Wright*, 63 Ark.App. 33, 972 S.W.2d 953 (1998). Child-support orders are reviewed by the appellate courts de novo on the record, and findings of fact will not be reversed unless they are clearly erroneous. *Hayes v. Otto*, 2009 Ark. App. 654, 344 S.W.3d 689. The trial court is also charged with making credibility determinations, which are given deference by the appellate courts. *Hu-*

*banks v. Baughman*, 2009 Ark. App. 585, 2009 WL 2958392.

Administrative Order No. 10 sets forth child-support guidelines in accordance with the income of the noncustodial parent in the form of a family-support chart. Reference to the chart is required, and there is a presumption that the amount of child support calculated pursuant to the most recent revision of the family-support-chart amount is reasonable. *Smith v. Smith*, 341 Ark. 590, 19 S.W.3d 590 (2000). It is a rebuttable presumption that the amount of child support calculated pursuant to the most recent revision of the chart is the amount of child support to be awarded. Ark.Code Ann. § 9–12–312(a)(2) (Repl. 2009). Section (I) of Administrative Order No. 10 requires that if the support order varies from the child-support guidelines, it must include a justification of why the order varies. "Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the family support chart, shall the presumption be rebutted." Ark.Code Ann. § 9–12–312(a)(2). Section (I) of Administrative Order No. 10 also provides that it shall be sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to the family-support chart is correct, if the court enters in the case a specific written finding within the Order that the amount so calculated, after consideration of all relevant factors, including the best interests of the child, is unjust or inappropriate.

Section (II)(a) of Administrative Order No. 10 defines "income" as

[A]ny form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, salaries, commissions, bonuses, workers' compensation, disability, payments pursuant to a

pension or retirement program, and interest less proper deductions for federal and state income tax; withholding for Social Security (FICA), Medicare, and railroad retirement; medical insurance or cash medical support paid for dependent children; and presently paid support for other dependents by court order, regardless of the date of entry of the order or orders.

When the payor's income exceeds the chart calculations, the trial court is to add together the chart amount and the percentage of the dollar amount that exceeds that figure, in this case, 25% for three children. *Id.* section (II)(b). Section (V) of Administrative Order No. 10 sets forth relevant factors to be considered by the court in determining the appropriate amounts of child support. They include food, shelter and utilities, clothing, medical expenses, educational expenses, dental expenses, child care, accustomed standard of living, recreation, insurance, transportation expenses, and other income or assets available to support the child from whatever source, including the income of the custodial parent. Additional factors are also listed. They include the procurement and maintenance of life insurance, health insurance, and dental insurance for the children's benefit; the provision or payment of necessary medical, dental, optical, psychological, or counseling expenses of the children; the creation or maintenance of a trust fund for the children; and the provision of day care. *Id.* These deviation factors may be considered for both custodial and noncustodial parents. *Id.*

The financial information—both needs and ability to pay—is of paramount consideration to the trial court when considering whether to modify a child-support obligation. In her affidavit of financial means, Dana, a pharmacist, indicated that she had three part-time jobs and brought home a monthly net pay of $3873.86, totaling more than $46,000 per year (assuming that she had available childcare and could work the number of hours she anticipated). She listed her cash on hand/income as $43,424, as well as monthly child-support payments of $9210, and debts of $185,196 (land, car, and credit cards), with payments of $4000 monthly. Dana listed a total of $10,914 in monthly expenses, which included payment for unimproved land, $2500; utilities, $727; food, $691; clothing, $457; drugs and medical insurance, $369; insurance, $583; legal fees, $363; transportation costs, $394; professional expenses, $186; travel expenses, $916; household expenses, $975; child care, $117; car payment, $500; taxes, $464; charity, $681; lawn care, $90; and miscellaneous and activity expenses, $605.

At the hearing, Dana testified that she could go back to work fulltime if she so chose, but she also volunteered a lot at her children's school. With regard to her affidavit of financial means, she went over the expenses with the trial court, many of which did not benefit the children. She testified that she, her new husband, and her three children lived in a 2000–square–foot mobile home that she received in the divorce and moved to DeWitt onto land her parents owned. She said that she had intentions of building a home with a foundation because she felt like the children deserved it. She testified that she and her new husband were planning to purchase seventy-two acres in DeWitt, subdivide half of it into lots, and build their house there. Dana testified that Kevin did not pay for any of the children's extracurricular activities and did not take any vacations with the children. She also said that he had not set up any savings accounts or college accounts for the children. According to her, Kevin was adamant that he did not intend to pay for college, vehicles, or car insurance for the children. Dana testified that an increase in child support would

allow her to build a home for the children to live in, save for college, and also have some money put away for big expenses such as vehicles, graduations, and weddings.

On cross-examination, Dana admitted that she lived on land owned by her parents. She agreed that she had not sought more employment opportunities, but stated that she was unable to work more with the burden of caring for the children. She testified that she and her husband earned about $101,000 together, and that if the $110,000 in tax-free child support was added to that, it was about $211,000. She admitted that she went from making $6000 monthly in alimony and child support combined to over $9000 monthly in child support. Dana also admitted that the children's expenses were being met by the child support paid by Kevin, except that they did not have a home with a foundation, which she considered to be a deficiency.

Kevin testified that if the trial court awarded Dana child support based on the chart amount, it would be $11,884.96 per month. He contended that many of Dana's expenses did not benefit the children, and asked the trial court to deviate his child-support obligation downward. He testified that the children's expenses were about $5700 per month, and that there was a $3473 per month excess over the children's needs he was currently paying. He stated his belief he was already providing money that could be set aside for future expenses, and that his children lived very well, better than most kids. He testified that he was glad to provide the child support he was providing, but that he wanted his kids to know what it means to work, that "life is not always given to you," and that it was not always free. According to him, he did not want his kids to get out into the "real world" and not be able to

function; that if they needed anything, such as a medical emergency, he would have no problem taking care of that. He contended that all the children's needs were being met with money left over to meet other obligations.

In its letter opinion, the trial court, considering the financial information presented, found that monthly child support was $9210.52 and the children's monthly expenses totaled $5737, leaving an average of $3473.52 per month paid to Dana. The trial court found, after a thorough review of all the evidence presented and arguments by counsel, that an increase to the chart amount was not warranted at this time, as the children's needs were being well taken care of with annual support of $110,526.24. The trial court reviewed the twenty factors for deviation found in Administrative Order No. 10 in finding that the children's needs were being provided for with money left over. Because the supreme court has ruled that separate accounts for the children's benefit cannot be set up by the circuit court, *Gilbow v. Travis*, 2010 Ark. 9, 372 S.W.3d 319, the trial court found an increase in monthly child support would be inappropriate at this time.

Dana argues that the trial court erred in not awarding her chart support simply because the amount exceeded the children's needs. She argues that the trial court failed to give Administrative Order No. 10 the proper deference. Her argument, citing *Downing v. Downing*, 45 S.W.3d 449, 456 (Ky.Ct.App.2001), is that this is not a case where the children have "three ponies," but rather that she and the children live in an aging mobile home on borrowed land and she works three jobs in an effort to make ends meet. Continuing her argument, she asserts that it is improper for a trial court to award her less than the chart amount simply because the chart amount

exceeds the children's actual needs, citing *Hubanks, supra,* and *Ceola v. Burnham,* 84 Ark.App. 269, 139 S.W.3d 150 (2003). However, in those cases, this court affirmed the trial courts' decisions to deny a deviation from the child-support chart.

 We note that each child-support case is dependent upon its unique facts and circumstances, as well as the credibility assessments and fact-finding tasks assigned to the trial court. Child support is not to provide for the accumulation of capital by children; rather, it is to provide for their reasonable needs. *Smith, supra.* A trial judge may deviate from the chart amount if it exceeds or fails to meet the needs of the children. *Williams v. Williams,* 82 Ark.App. 294, 108 S.W.3d 629 (2003). Granting an excessive amount of child support over and above a child's needs would not impart a work ethic nor would it be in his best interest to give him everything he wanted. *Davis v. Bland,* 367 Ark. 210, 238 S.W.3d 924 (2006). Furthermore, Administrative Order No. 10 provides that the income of the custodial parent is a relevant factor to consider in awarding child support.

We do not find Dana's arguments to be persuasive. Dana's argument that she is simply trying to "make ends meet" rings hollow, especially given the fact that she receives over $110,000 in tax-free child support every year, in addition to the approximately $100,000 she and her current husband earn annually. In this case, all of the children's needs are being met from Kevin's child-support payments, with over $3000 left over each month. Dana's approximate $46,000 annual income from her part-time jobs as a pharmacist does not even factor into the children's expenses at this time. Furthermore, Dana testified that she could go to work full-time if she so chose. Kevin is not the only parent required to support these children; in ac-

cordance with Administrative Order No. 10, Dana's income is also a relevant factor to consider in awarding child support. *Davis, supra.* Because the trial court's findings of fact were not clearly erroneous, we affirm.

Affirmed.

PITTMAN and ROBBINS, JJ., agree.