BART F. VIRDEN, Judge
This appeal arises out of a paternity and child-support case. The Pulaski County Circuit Court entered orders finding appellee Arthur Cyrus to be the father of two children born to appellant Dominika Szwedo, awarded custody of the children to Szwedo, and ordered Cyrus to pay $ 8,333 a month in child support. The court declined Szwedo's request for approximately $ 450,000 in retroactive child support. The court ordered Cyrus to establish college savings accounts for each child of at least $ 100,000. On appeal, Szwedo argues six points. We affirm in part and reverse in part. We remand for further proceedings consistent with this opinion.
The parties met in 2003 while attending medical school in Poland and soon began dating. Cyrus returned to the United States in 2004, and Szwedo followed in 2006 when she began her residency in New York City. The exact nature and extent of the parties' relationship was contentious and disputed. Two daughters were born to Szwedo, A.R.C. in 2010 and A.G.C. in 2013. The parties separated for good in the summer of 2015.
In December 2015, Cyrus sued to establish paternity of the children and requested joint custody. Szwedo answered and counterclaimed for custody, to set visitation, *488 and for child support, both current and retroactive to each child's birth. Cyrus answered the counterclaim, admitting the paternity of the children but denying the remaining allegations. Cyrus amended his answer to Szwedo's counterclaim on May 9, 2017, to plead the affirmative defenses of estoppel, laches, payment, set off, waiver, and satisfaction.
On May 15, 2017, at the beginning of the two-day trial, the circuit court entered a paternity decree that found Cyrus to be the father of A.R.C. and A.G.C. and incorporated and approved the parties' agreement as to custody and visitation. The agreement provided that the parties would have joint legal custody of the children with Szwedo having primary physical custody and Cyrus having visitation. The agreement covered visitation in great detail and provided that the issues of the children traveling outside Arkansas and outside the United States were reserved for the final hearing. Also reserved for trial were the issues of current and retroactive child support and payment of the attorney ad litem's fees.
At trial, the court heard testimony about both parties' incomes. Szwedo calculated Cyrus's income for child-support purposes and his child-support obligation based on the tax returns he produced and sought a net judgment for a retroactive child-support arrearage of approximately $ 450,000. There was also extensive testimony about the nature of the parties' relationship. Szwedo testified that Cyrus was abusive, had raped her, and had threatened to kill her. She further testified that she was afraid Cyrus would disappear with the children if he were allowed to travel outside Arkansas or internationally with the children. Cyrus testified that he opened joint bank accounts with Szwedo and that he had supported the children through housing and financial support. The court also heard recommendations from the attorney ad litem.
On June 28, 2017, the court issued an order from the final hearing. After adopting the paternity decree, the court recounted a brief history of the parties' relationship before addressing the reserved issues. The court found that it was in the best interest of the children to have the opportunity to visit with their extended family on both sides and that there was no reason that the children should not be allowed to travel internationally with either parent. The court did order certain safeguards to allay some of Szwedo's concerns.
The court noted that Szwedo was claiming that she was entitled to upwards of $ 450,000 in retroactive child support and that the parties disagreed over the extent of Cyrus's financial involvement and support before filing this action. After noting that it could consider the circumstances in awarding retroactive child support, the court found that it would be fundamentally unfair to award the full amount of retroactive support sought. The court did not specifically order any amount of retroactive support but ordered that Cyrus establish a 529 account or similar savings plan for each daughter valued at $ 100,000 each to prepare for their secondary-education expenses.
Turning to prospective support, the court considered Cyrus's 2014, 2015, and 2016 income, as well as his income to date in 2017. The court found that Cyrus's net income may vary from $ 30,000 to $ 50,000 a month depending on the amount of work he completes. Some of the variation resulted from Cyrus forgoing some shifts in order to exercise his visitation. The court found Cyrus's net income to be $ 40,000 a month. Pursuant to the guidelines, the court calculated the total current child-support obligation to be $ 8,333 a *489 month. The court found that $ 8,333 was a fair amount of child support considering the needs of the children, the income of both parties, and the fact that Cyrus's income may deviate from month to month.
The court ordered the parties to equally divide the remaining balance of $ 11,530 due and owing on the attorney ad litem's fee.
Szwedo filed a motion seeking $ 111,706 in attorney's fees and $ 7,060 in costs, for a total $ 118,766. Cyrus responded to Szwedo's motion for fees and sought his own award of fees. He sought $ 84,897 in attorney's fees and $ 36,931 in costs, for a total of $ 121,828. He asserted that Szwedo necessitated the fees by making unfounded allegations of abuse and unnecessary discovery requests.
Cyrus filed a motion to amend the court's findings and to modify the order, noting that there may be a prohibition to an order directing funds to an interest-bearing account. Cyrus argued that the court may grant less child support than the chart amount if warranted by the specific circumstances of each case. Cyrus sought to have the court amend its order to find that his retroactive child-support obligation since the birth of the parties' oldest child through the entry of the first child-support order was $ 450,000. Cyrus suggested that the court could then apply a deviation analysis to find that the proper amount of retroactive child support was $ 200,000. He continued, arguing that the court could then find that he had satisfied that obligation by funding the two educational accounts. Szwedo responded to the motion, arguing that there was no legal or factual basis for the relief Cyrus sought.
On August 11, 2017, the circuit court entered an order addressing the various posttrial motions. The court noted that the matter was hotly contested and that the parties cared very little about one another. The court first addressed Szwedo's request for retroactive child support and whether Cyrus provided in-kind support while the parties resided together. Although the court had difficulty determining which party was telling the truth about their relationship, it had no doubt that the children had been supported by both parties to some extent. The court found that Szwedo failed in her burden of proof to show that Cyrus had not supported the children from 2010 to 2015, based in part on Szwedo's lack of credibility due to her behavior. The court found Cyrus to be more credible. The court noted that it could have been clearer in stating that no retroactive support was owed and that the provision regarding the educational accounts was simply a means to provide for the children's education.
The court also took up the issue of attorney's fees. The court noted that the attorneys spent an "inordinate amount of time representing their client even though the issues presented were not particularly novel or unique." The court also noted that the custody and visitation issues were ultimately settled. After considering the factors provided in case law, the court ordered Cyrus to pay Szwedo $ 20,000 in attorney's fees. Each party was to bear the balance of their attorney's fees and costs. This appeal followed.
Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. Ward v. Doss , 361 Ark. 153, 158, 205 S.W.3d 767, 770 (2005) (citing McWhorter v. McWhorter , 346 Ark. 475, 58 S.W.3d 840 (2001) ). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their *490 testimony. Id. at 158, 205 S.W.3d at 770. As a rule, when the amount of child support is at issue, we will not reverse the circuit court absent an abuse of discretion. Id. , 205 S.W.3d at 770. However, a circuit court's conclusion of law is given no deference on appeal. Id. , 205 S.W.3d at 770.
Szwedo first argues that the circuit court erred in allowing Cyrus to amend his answer to her counterclaim five days before trial to assert the affirmative defenses of estoppel, laches, payment, setoff, waiver, and satisfaction. Cyrus argues that the point is not preserved for our review because Szwedo's argument on appeal-that Cyrus did not timely raise the affirmative defenses-is not an objection she made at trial. Cyrus further argues the Szwedo failed to show how she was prejudiced by the late amendment.
After Cyrus sued to establish paternity, Szwedo answered and counterclaimed, seeking custody and past and future child support. Cyrus answered the counterclaim, admitting paternity but not raising any affirmative defenses. On May 9, 2017, five days before trial, Cyrus amended his answer to Szwedo's counterclaim to assert the affirmative defenses mentioned above. Cyrus testified about his relationship with Szwedo and various expenditures that he asserted should be considered as a defense to Szwedo's claim for retroactive support. He also sought to introduce several birthday and holiday cards and letters he had sent to Szwedo and the children. Szwedo objected to his testimony on various grounds, such as relevancy and that affirmative defenses were not pled. Ultimately, after offering Szwedo a continuance, the circuit court overruled all of the objections.
We find no reversible error. Rule 15 of the Arkansas Rules of Civil Procedure encourages liberal amendments of pleadings. Deer/Mt. Judea Sch. Dist. v. Kimbrell , 2013 Ark. 393, 430 S.W.3d 29. The circuit court is vested with broad discretion in allowing or denying amendments. Id. While Rule 15 allows for liberal amendments of pleadings, we adhere to our well-established standard of review that we will not reverse a circuit court's decision allowing or denying amendments to pleadings absent a manifest abuse of discretion. Id.
Under Rule 15, a party may amend his pleadings at any time without leave of the court. If, however, the opposing party files a motion objecting to the amendment, the circuit court must determine whether prejudice would result to that party or if the case would be unduly delayed by the amendment. Turner v. Stewart , 330 Ark. 134, 952 S.W.2d 156 (1997). An important consideration in determining prejudice is whether the party opposing the motion will have a fair opportunity to defend after the amendment. Id. A party should be allowed to amend his pleading absent proof of prejudice, and the failure of the opposing party to seek a continuance is a factor to be considered in determining whether prejudice was shown. Id. Where neither a continuance was requested nor a demonstration of any prejudice resulting from an amendment was shown, the amendment should be allowed. Id.
In this case, Szwedo did not file a motion objecting to the allegedly untimely amendment. It is also unclear whether she actually objected to the amendment as untimely. Nor did she accept a continuance when offered by the circuit court or demonstrate that she would be prejudiced or that undue delay would result if the court should allow the amendment. Accordingly, it was not error for the circuit court to allow the amendment.
Szwedo's second point is the heart of the dispute-the proper amount of retroactive and current child support. Szwedo argues *491 that the circuit court erred in calculating the amount of Cyrus's current support level as well as in ordering him to fund two $ 100,000 educational trusts for the children instead of awarding retroactive child support of approximately $ 450,000. She further argues that an award of retroactive child support is mandatory.
We start with the retroactive-support issue. Cyrus concedes that Szwedo's $ 450,000 figure is the correct amount of retroactive child support he would owe but argues that it is unfair to award Szwedo the entire $ 450,000 because he provided for his family by living with them, providing a home in Little Rock, and paying various expenses for Szwedo and the children. He further argues that the circuit court can be affirmed on the basis that he presented sufficient evidence to show that he was entitled to an offset against retroactive child support by providing home and paying expenses.
In its June 28, 2017 order, the circuit court did not specifically reference the child-support guidelines or determine Cyrus's income from the birth of the first child to the time of trial. It did note that Szwedo was seeking "upwards of $ 450,000.00 in retroactive child support as contemplated in Ark. Code Ann. § 9-10-111." It also noted that the parties disputed how much in-kind support Cyrus may have contributed. But the circuit court's only finding was that "it would be fundamentally unfair to award the full amount of retroactive child support sought."
In its August 11, 2017 order on Cyrus's motion to amend the court's findings, the court noted that it could have been clearer in stating that no retroactive support was owed and that the provision regarding the educational accounts was simply a means to provide for the children's education. The court ultimately found that no retroactive support should be awarded.
The circuit court abused its discretion in determining not to award any amount of retroactive support. In Walden v. Jackson , 2016 Ark. App. 573, 506 S.W.3d 904, we held that the plain language of Arkansas Code Annotated section 9-10-111(a) (Repl. 2015) requires an award of retroactive child support from the date of the child's birth.[1] The Arkansas Child Support Guidelines are to be used in setting retroactive support. Akins v. Mofield , 355 Ark. 215, 132 S.W.3d 760 (2003). The guidelines set child support at an amount determined by the weekly or monthly take-home pay of the noncustodial parent. Id. at 222, 132 S.W.3d at 764 (citing In re Admin. Order No. 10: Ark. Child Support Guidelines, 331 Ark. App'x 581 (1998) ). Section (I) of Administrative Order Number 10 provides as follows:
It is a rebuttable presumption that the amount of child support calculated pursuant to the most recent revision of the Family Support Chart is the amount of child support to be awarded in any judicial proceeding for divorce, separation, paternity, or child support. The court may grant less or more support if the evidence shows that the needs of the dependents require a different level of support.
All orders granting or modifying child support (including agreed orders) shall contain the court's determination of the payor's income, recite the amount of *492 support required under the guidelines, and recite whether the court deviated from the Family Support Chart. If the order varies from the guidelines, it shall include a justification of why the order varies as may be permitted under Section V hereinafter. It shall be sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to the Family Support chart is correct, if the court enters in the case a specific written finding within the Order that the amount so calculated, after consideration of all relevant factors, including the best interests of the child, is unjust or inappropriate.
Ark. Sup. Ct. Admin Order No. 10. Section (V) of the guidelines sets out deviation considerations, which include twelve relevant factors, such as food, shelter, and child care, to be applied to the child or children in question, as well as eight additional factors that may warrant an adjustment to the child-support obligation.
The circuit court's analysis in this case omitted the important first steps of referencing the guidelines in determining Cyrus's income for the relevant time periods and the amount of support due based on that income before moving to consideration of the deviation factors under the guidelines. Instead, the court appears to have considered deviation factors only when it found that it would be "fundamentally unfair" to award the full amount sought by Szwedo. But the court never explained why it would be "fundamentally unfair" to award the full amount. See Gilbow v. Travis , 2010 Ark. 9, 372 S.W.3d 319 ; Davis v. Bland , 367 Ark. 210, 238 S.W.3d 924 (2006). Because the circuit court's analysis did not comport with the guidelines, we reverse and remand for the court to award retroactive child support pursuant to the guidelines in Administrative Order No. 10. We express no opinion as to the proper amount of retroactive support.
We make one other point before we leave the issue of retroactive support. The circuit court ordered Cyrus to establish and fund two educational savings accounts valued at $ 100,000 each to prepare for the children's secondary-education expenses. The court later clarified that this was not in lieu of retroactive support but was merely a means to provide for the children's education. However, the court did not have authority to order that the retroactive child support amount be placed in either a trust or an interest-bearing account. Gilbow, supra. The creation of a trust or educational savings account is a deviation factor under the guidelines; however, the court cannot order the creation of such accounts in lieu of an award of retroactive support. Id.
This brings us to the issue of current child support. Here, the court's findings and analysis more closely follow the guidelines. The court noted that Szwedo submitted evidence that Cyrus's net monthly income was $ 53,605 in 2014 and $ 45,794 in 2015. Cyrus's affidavit of financial means from the temporary hearing in February 2016 showed a net monthly income of $ 39,515. The court had doubts about the accuracy of Cyrus's May 1, 2017 affidavit showing a net monthly income of $ 16,465. The court also noted that Szwedo presented evidence that for the eleven months between June 2016 and April 2017, Cyrus deposited a total of $ 564,892 into his bank account, an average of $ 51,353 a month. The court found that Cyrus's net income may vary from $ 30,000 to $ 50,000 a month, depending on the amount of work he completes and that he may have to forego some work in order to exercise his visitation. The court found Cyrus's net income to be $ 40,000 a month. Pursuant to the guidelines, the court set child support for two children at $ 8,333 a month.
*493 The court found that $ 8,333 was a fair amount of child support for Cyrus to pay considering the needs of the children, the income of both parties, and that Cyrus's income may deviate from month to month.
Szwedo argues that the circuit court should have found that Cyrus's net monthly income was $ 49,700 a month with a corresponding child-support obligation of $ 10,370 a month. We cannot say that the circuit court abused its discretion in setting Cyrus's current support obligation at $ 8,333 a month. The amount was supported by the evidence, and the court explained its reasons for its conclusions, indicating that it did not act improvidently, thoughtlessly, or without due consideration. Taylor v. Taylor , 369 Ark. 31, 250 S.W.3d 232 (2007).
For her third point, Szwedo argues that the circuit court abused its discretion by awarding the attorney ad litem a fee based on the ad litem's oral statement of the amount of the fee requested and not requiring the ad litem to file a motion and supporting documentation. Szwedo has waived the argument.
At the beginning of the final hearing, after the parties announced settlement of the custody and visitation issues, the court took a recess to read the settlement agreement and identify the remaining issues to be tried. During a discussion about a counselor for the children and whether the current ad litem would remain, the following colloquy took place:
ATTORNEY FOR SZWEDO : And, Your Honor, with regard to her fees, I don't think we need any testimony. I don't think anybody has an objection to [the attorney ad litem's] fees. They are reasonable. I think [the attorney for Cyrus] would agree with that. It's just how they're going to be allocated between the parties. That's the issue. I just want to make that clear, that we're not litigating the validity of her fees. It's just the allocation between the parties.
THE COURT : Okay. All right....
Later, the ad litem made her report at the close of the trial. She estimated her outstanding fee to be approximately $ 11,530. She said that sum included credit for all payments made to date. Szwedo made no objection. She is now contesting the amount of the fees by arguing that there is no way to judge the reasonableness of the ad litem's fee request without a motion and proper documentation.
By asserting that the circuit court erred in awarding attorney's fees to the ad litem because the ad litem did not file a motion seeking attorney's fees after stating at trial that no testimony was needed about the amount of the ad litem's fees and that the issue was merely the allocation of the fee between the parties, Szwedo is now assuming a position clearly inconsistent with her position taken at trial. As such, it would be inherently unfair to permit her to now seek reversal based on these inconsistent positions, and she is estopped from asserting the inconsistent position. Dupwe v. Wallace , 355 Ark. 521, 140 S.W.3d 464 (2004).
Also under this point, Szwedo argues that the circuit court failed to follow the statutory procedure for awarding fees for the attorney ad litem and abused its discretion by failing to do so. No reversible error is shown because Szwedo cannot show prejudice from the circuit court's actions.
A circuit court may appoint an attorney ad litem if it will facilitate a custody case and protect the rights of the child. Ark. Code Ann. § 9-13-101(e)(2) (Repl. 2015). The ad litem's fees and reimbursable expenses shall be paid by the Administrative Office of the Courts (AOC) from funds *494 appropriated for that purpose. Ark. Code Ann. § 9-13-101(e)(4). The court is required to send a copy of its fee order to the AOC. Ark. Code Ann. § 9-13-101(e)(5)(A). The court may also require the parties to pay all or a portion of the ad litem expenses depending on their ability to pay. Ark. Code Ann. § 9-13-101(e)(5)(B) (Repl. 2015).
In this case, the court ordered that the parties be equally responsible for the ad litem's remaining fee. Cyrus states that he has paid his portion of the fee. It appears that Szwedo has paid nothing, although she disputes this.
Szwedo argues first that the court should have transmitted the fee order to the AOC. She further argues that there was no hearing before the court awarded the fees.
Here, the record does not disclose whether the court's order awarding attorney's fees to the ad litem was sent to the AOC. Assuming that the statute requires the order to be sent to the AOC and that it was not, Szwedo has not shown prejudice because section 9-13-101(e)(5)(B) nevertheless allows the circuit court to order the parties to pay the entire amount of the ad litem's attorney's fees. It is the appellant's burden to demonstrate and explain reversible error. Lowder v. Gregory , 2014 Ark. App. 704, 451 S.W.3d 220. Moreover, in the present case, there was extensive testimony at trial about both parties' incomes and ability to pay the fees. No separate hearing was necessary.
Next, Szwedo argues that the circuit court ordered Cyrus to deposit the $ 20,000 attorney's fee into the registry of the court without providing her an opportunity to be heard. She further asserts that the attorney's liens filed by one of her former attorneys and the attorney ad litem were defective.
More background is needed to explain these issues. After entry of the August 11, 2017 order awarding Szwedo attorney's fees, attorney's liens were filed by the attorney ad litem and one of Szwedo's former attorneys. The former attorney asserted that Szwedo owed a balance of $ 23,588.78, exclusive of interest. The attorney ad litem stated that Cyrus had paid his portion of the ad litem's fee but that Szwedo had not. According to the ad litem, Szwedo still owed a balance of $ 5,765. Both attorneys sought to be paid out of the fee awarded in the August 11, 2017 order.
Following the filing of the attorney's liens, Cyrus filed a motion seeking to deposit the attorney's fee into the registry of the court so that the court could determine how the funds were to be disbursed. On the same day, approximately four hours later, the circuit court entered an order directing Cyrus to deposit the funds into the court's registry.
Szwedo would later file her response to Cyrus's motion to deposit the attorney's fees into the court's registry, asserting that both liens failed to comply with the attorney's-lien statute in several particulars and that the court failed to allow her proper time to respond to the motion before entering the order directing Cyrus to deposit the funds into the court's registry.
These issues are not preserved for our review because Szwedo failed to bring the matter to the court's attention and the court has not ruled on this issue. The burden of obtaining a ruling is on the movant; objections and matters left unresolved are waived and may not be relied upon on appeal. Stilley v. Univ. of Ark. at Fort Smith , 374 Ark. 248, 287 S.W.3d 544 (2008).
For her fifth point, Szwedo asserts that there was no basis for the circuit *495 court to allow Cyrus to have access to her medical records for a ten-year period.
At a February 6, 2017 motion hearing, Cyrus and his attorney asked for Szwedo to execute certain medical releases. They stated that Szwedo had previously executed three such releases but was objecting to one directed to her obstetrician on the basis of relevancy. The circuit court stated that if Szwedo were claiming that Cyrus had abused her, she would be required to execute the release. Szwedo also claimed that doing so would violate her privacy but conceded that the records would not support her claim of abuse because it was not reported to her doctor. The court ultimately ordered Szwedo to execute the release. Szwedo was also directed to update her discovery responses.
Szwedo argues that the circuit court abused its discretion by ignoring her concession that the medical records would not support her claim of abuse. Again, there is no reversible error in this issue. The only relief Szwedo is seeking is the return of the medical records and their destruction. However, the records were the subject of an agreed protective order that limited who can view the records and under what conditions. The protective order also provided that the records must be destroyed or returned to Szwedo at the end of the litigation. Szwedo does not state how she was prejudiced by the ruling allowing access. Again, it is her burden to demonstrate and explain reversible error, and that was not done in this instance. Lowder, supra.
Finally, Szwedo argues that the circuit court erred in authorizing Cyrus to travel abroad with the children to countries without extradition treaties with the United States. She argues that such travel is not in the children's best interest and that Cyrus cannot preemptively waive extradition.
Both parties were born outside of the United States-Szwedo in Poland; Cyrus in St. Vincent in the Caribbean. Both have a parent and extended family living outside the United States. Both are United States citizens, with Szwedo holding dual citizenship. Poland is a signatory to the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention), while St. Vincent is not.
Szwedo testified that she did not want Cyrus to travel out of the country with the children because of her fear that he would disappear with the children. In her report, the attorney ad litem recommended that Cyrus be allowed to travel internationally with the children and proposed several safeguards, including that Cyrus post a $ 500,000 bond at least thirty days prior to traveling, that he provide Szwedo with a detailed itinerary, and that he waive extradition.
The circuit court found that it is in the children's best interest that they be allowed to travel internationally with both parents to visit extended family. The court adopted the ad litem's proposed safeguards, along with the provision of a telephone number.
On appeal, Szwedo argues that Cyrus's waiver of extradition is invalid because one must be accused of a crime before being able to waive extradition. She further argues that there was nothing to stop Cyrus from rescinding the waiver in the future. However, neither of these arguments are preserved for our review. When the attorney ad litem was making her recommendation that the court allow international travel for the children and proposed the safeguards, including that Cyrus waive extradition, neither Szwedo nor her attorney made any objection that the waiver was unenforceable. Our court has stated many times that it will not consider arguments *496 raised for the first time on appeal, and even constitutional arguments must be raised below. Doss v. Miller , 2010 Ark. App. 95, 377 S.W.3d 348 ; Camp v. McNair , 93 Ark. App. 190, 217 S.W.3d 155 (2005).
In conclusion, we reverse and remand on the issue of retroactive child support. We affirm on the issues of Cyrus's assertion of affirmative defenses; current child support; the attorney ad litem's fees; the release of Szwedo's medical records; and the circuit court's allowing Cyrus to travel internationally with the children.
Affirmed in part; reversed and remanded in part.
Klappenbach and Whiteaker, JJ., agree.

Section 9-10-111(a) states that "[i]f it is found by the circuit court that the accused is the father of the child and, if claimed by the mother, the circuit court or circuit judge shall give judgment for a monthly sum of not less than ten dollars ($ 10.00) per month for every month from the birth of the child until the child attains eighteen (18) years of age." (Emphasis added.)