LAKE VIEW SCHOOL DISTRICT NO. 25 of Phillips County,
Arkansas, et al. (now Barton-Lexa), Appellants  *v.*
Mike HUCKABEE, Governor of the State of Arkansas,
et al., Appellees,

Rogers School District No. 30, Little Rock School District, and
Pulaski County School District, Intervenors/Appellees

01-836                                                                257 S.W.3d 879

Supreme Court of Arkansas
Opinion delivered May 31, 2007

ROBERT L. BROWN, Justice.  On November 30, 2006, this
court issued an opinion deferring issuance of the mandate
in this case for 180 days and reappointing the Special Masters, Bradley
D. Jesson and David Newbern, to file an additional report evaluating
whether the constitutional deficiencies referred to in this court's
opinion of December 15, 2005, had been cured. *See Lake View School
Dist. No. 25 v. Huckabee,* 364 Ark. 398, 220 S.W.3d 645 (2005).
Specifically, we referred to the lack of final legislative action raised by
the intervenors/appellees Rogers School District No. 30, Barton-
Lexa School District, Little Rock School District, and Pulaski County
Special School District ("School Districts") in connection with the
following issues:

- Academic Facilities

- English Language Learners

- Student Growth Funding

- Collection Rates for Local Taxes

- Teacher Raises and National School Lunch Aid

The Masters filed an Interim Report with this court on March 16, 2007, and filed their Final Report with this court on April 26, 2007. Under Arkansas Rule of Civil Procedure 53(e)(2), the parties had twenty days to file objections to the Masters' findings of fact. No objections have been filed. Rule 53(e)(2) further provides that application for action on the report shall be by motion. No application for action has been filed. According to this court's calculations, the 180 days for deferring issuance of the mandate expired on May 29, 2007. On this court's own motion, we adopt the two Masters' Reports and direct the clerk of this court to issue the mandate forthwith. To emphasize the unanimity of the court on this matter, each justice has affixed his or her signature at the end of this opinion.

The *Lake View* litigation has resulted in numerous opinions and orders from this court. Suffice it to say that the seminal decision was *Lake View School Dist. No. 20 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002), where this court found that public school funding was inadequate and that substantially equal educational opportunity was not being afforded to Arkansas students. As a result, this court held that there was a violation of the Arkansas Constitution. Since that time, the Masters have been appointed by this court three times and have issued four Reports on the constitutionality of the State's funding of public education.[1]

This court expresses its heartfelt thanks and deep appreciation to the Masters for their work in this case. It is not hyperbole to say their review of the facts and documents when compiling their reports has been essential to elevating Arkansas's educational system to one that meets constitutional status. We would be remiss if we failed to thank the members of the General Assembly and the Governor and his agencies in making great progress, especially in the recent enactments that assure that those legislative and execu-

---

[1] Previous reports were filed on April 2, 2004, and October 3, 2005.

tive bodies will continue their efforts with the vigilance necessary to maintain and improve Arkansas's education system. While we have sought the Masters' assistance on three different occasions to gather the information to address and decide the constitutional question before us, we are now able to direct the issuance of the mandate in this case due to the hard work of the Masters, the General Assembly, and the executive branch. This court, the people of Arkansas, and the generations to come are indebted to them for their commitment to education.

## I. Masters' Report

### A. Masters' Findings of Fact

a. Public School Facilities

In *Lake View School Dist. No. 25 v. Huckabee*, 364 Ark. 398, 220 S.W.3d 645 (2005), this court listed the legislative enactments by the General Assembly in 2005 affecting academic facilities and also the actions by the Joint Committee on Educational Facilities and the Task Force on Educational Facilities. We then concluded that "appropriations for the Immediate Repair Program and Priority One facilities construction and repair for safe, dry, and healthy facilities were grossly underfunded and, thus, inadequate."

The Masters have now found that the General Assembly "addressed the need for state assistance with public school academic facilities in a substantial and commendable fashion." The Masters listed the following actions:

- Referring to the October 1, 2006 Academic Facilities Master Plan, the Masters gave the following status report for actions taken in 2006.

  — The General Assembly appropriated an additional $50,000,000 for facilities with a "carry-forward" provision in the Second Extraordinary Session of 2006.

  — As of October 1, 2006, 178 of 301 projects had been completed in academic facilities to correct immediate hazardous conditions. The balance will be completed in 2007. The State participation in the 301 projects cost $35,000,000.

  — As of the same date, 106 of 213 approved projects had been completed for new construction or additions to academic

facilities for which debt was incurred or funds spent between January 1, 2005, and June 30, 2006. The completion date for all projects is estimated to be March 2008. The State's participation in these projects is $87,000,000.

— The Academic Facilities Partnership Program is for future academic facilities construction. $300,000,000 in state assistance has been approved. The State's share is estimated to be $48,000,000 in fiscal year 2007, $185,000,000 in fiscal year 2008, and $67,000,000 in fiscal year 2009.

• Act 1237 of 2007 appropriated $456,000,000 for public school academic facilities in addition to $150,000,000 available from unspent fund balances and $35,000,000 for each year of the next biennium. This, the Masters found, will "fully fund the State's share of approved academic facilities requests for the next two years."

• Each School District in the state as well as the Facilities Commission is now required to adopt a ten-year master plan for school facilities and to prioritize needs. Guidelines and a *Public School Academic Facility Manual* have been adopted.

• Regarding the Academic Facilities Wealth Index, Act 727 of 2007 now provides some state assistance to every school district based on actual need for facilities in the individual school districts as well as the school district's ability to pay.

• Act 995 of 2007 provides state loans for facility construction in school districts with rapid enrollment growth.

• Act 1021 of 2007 authorizes the Facilities Commission to issue $750,000,000 in bonds to finance additional academic construction.

• Act 996 of 2007 provides a mechanism for the State to declare a school district in academic-facilities distress with resulting state sanctions.

## b. Foundation-Funding Aid

The Masters found that per student foundation funding has been increased for these school years by Act 19 of the First Extraordinary Session of 2006 and Act 272 of 2007, whereas initially the General Assembly had provided no increase for the 2005-2006 school year:

- 2005-2006       $5,486
- 2006-2007       $5,662
- 2007-2008       $5,719
- 2008-2009       $5,789

Act 272 of 2007, in addition, authorizes the State to make up the difference if the actual school tax collection in the school district is less than the formula of the uniform rate of taxation (25 mills) multiplied by 98% of the assessed value of property in the school district. This assures that basic per student foundation funding is being met.

By Act 273 of 2007, the General Assembly added per student funding in excess of the amount considered adequate. The additional amounts are:

- $51 for school year 2007-2008
- $36 for school year 2008-2009

c. Growth Funding

In 2006, the School Districts raised an issue about the lack of contemporaneous funding for school districts experiencing rapid growth in student enrollment. The Masters found that Acts 20 and 21 of the First Extraordinary Session of 2006 and Act 461 of 2007 dealt with this issue by providing "declining enrollment funding" to ease the burden of ongoing expenses where the student population declines. Act 461 also increases per-student funding for districts which have rapid student growth. The intent of the General Assembly was to make the appropriate adjustments as quickly as possible.

d. Categorical Funding

The Masters found that Act 272 of 2007 increased special-needs funding considerably in these categories:

- Funding for students placed in alternative learning environments increased from $3,750 in school year 2006-2007 to $4,063 in school year 2007-2008.
- Foundation funding for English language learners increased from $195 to $293 per learner in 2007-2008, as recommended by the Adequacy Study Oversight Committee.

- State funding for students qualifying for national school-lunch assistance was increased based on the percentage of qualified students.

e. Teacher Salaries

The Masters found that a report of the Adequacy Study Oversight Subcommittee, as amended and adopted by the full House and Senate Education Committees on January 22, 2007, ranks Arkansas second in average teacher pay among the six surrounding states and ninth among sixteen states represented by the Southern Regional Education Board. They also found that Act 272 of 2007 raised the minimum teacher salaries depending on the academic degree and experience of the teacher:

| Year | Bachelor's Degree and No Experience | Master's Degree and 15 Years Experience |
|------|-------------------------------------|------------------------------------------|
| 2006-2007 | 28,611 | 40,402 |
| 2007-2008 | 28,897 | 40,731 |
| 2008-2009 | 29,244 | 41,130 |

The Masters further noted that Act 1590 of 2007 permits the continuation of using excess national school lunch money to supplement certain teacher salaries, which was first enacted by Act 30 of the First Extraordinary Session of 2006. In addition, they found that Act 1044 of 2007 allows for a continuation of incentives, first enacted by Act 101 of the Second Extraordinary Session of 2003, to attract and retain teachers who teach in high-priority districts. It provides annual bonuses of $4,000, $3,000, and $2,000 for such teachers. The Masters stated that the parties agree there is no remaining issue with respect to teacher retirement and that the teacher-retirement contribution increase has been funded.

B. Masters' Findings of Facts and Conclusions of Law[2]

The Masters report that some school districts have large balances or reserves of funds set aside to offset catastrophe or perhaps for future projects. The Masters emphasize that Act 28 of the First Extraordinary Session of 2006 requires school districts to file annual reports with the Department of Education concerning

---

[2] *See* Ark. R. Civ. P. 53.

daily expenditures, fund balances, and funding sources as well as an explanation of the reasons for maintaining fund balances.

The Masters emphasize that accurate information furnished by the school districts to the Department of Education is essential. They underscore the necessity of a comprehensive school improvement plan to assure that students are receiving an adequate education. Reports on teacher salaries as well as school budgets are required. The Masters say that this "monitoring legislation . . . should help in exercising the constant vigilance to ensure the constitutional goal is met."

The Masters also emphasize Act 57 of the Second Extraordinary Session of 2003, Act 108 of the Second Extraordinary Session of 2003, Act 20 of the First Extraordinary Session of 2006, and Act 1204 of 2007, which highlight the need for continual assessment and evaluation by legislative committees on whether a substantially equal opportunity for an adequate education is being afforded to Arkansas students and which establish, as well, that education is the State's first funding priority. The Masters find that the General Assembly is in compliance with those acts and understands now that the job for an adequate education system is "continuous" and that there has to be "continued vigilance" for constitutionality to be maintained.

The Report reflects the Masters' findings as follows:

> The framework for a much improved Arkansas public education system is now in place. The funds to support it are now at hand. We have no doubt that a successful future for Arkansas's public schools will depend, in large measure, upon the continuous financial and standards review that the General Assembly has undertaken at this point. Meeting the challenge of using the support which is in place, and that which will ensue, to give adequate education to Arkansas's children now passes to the local school districts. They should have the means to meet the challenge if the State remains committed to the all-important practice of funding education first.

### III. Conclusion

■ This court adopts the Masters' Interim Report and Final Report. We hold that the General Assembly has now taken the required and necessary legislative steps to assure that the school children of this state are provided an adequate education and a substantially equal educational opportunity. A critical component

of this undertaking has been the comprehensive system for accounting and accountability, which has been put in place to provide state oversight of school-district expenditures. What is especially meaningful to this court is the Masters' finding that the General Assembly has expressly shown that constitutional compliance in the field of education is an ongoing task requiring constant study, review, and adjustment. In this court's view, Act 57 of the Second Extraordinary Session of 2003, requiring annual adequacy review by legislative committees, and Act 108 of the Second Extraordinary Session of 2003, establishing education as the State's first funding priority, are the cornerstones for assuring future compliance.

Because we conclude that our system of public-school financing is now in constitutional compliance, we direct the clerk of this court to issue the mandate in this case forthwith.

Chief Justice Jim Hannah

Justice Robert L. Brown

Justice Tom Glaze

Justice Jim Gunter

Justice Don Corbin

Justice Paul Danielson

Special Justice Carol Dalby

IMBER, J., not participating.