SLIP OPINION



# SUPREME COURT OF ARKANSAS

**No.** CV-13-182

| | |
|---|---|
| DEER/MT. JUDEA SCHOOL DISTRICT<br>APPELLANT | **Opinion Delivered** October 10, 2013 |
| | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT |
| V. | [NO. 60-CV-2011-2677] |
| | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| THOMAS W. KIMBRELL<br>APPELLEE | |
| DEER/MT. JUDEA SCHOOL DISTRICT<br>APPELLANT | |
| V. | AFFIRMED IN PART; REVERSED AND REMANDED IN PART; MOOT IN PART; MOTION TO DISMISS DENIED. |
| MIKE BEEBE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF ARKANSAS; MARK DARR, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS LIEUTENANT GOVERNOR OF THE STATE OF ARKANSAS; DR. THOMAS W. KIMBRELL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF EDUCATION FOR THE STATE OF ARKANSAS; DR. NACCAMAN WILLIAMS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE STATE BOARD OF EDUCATION; DR. BEN MAYS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE STATE BOARD OF EDUCATION; SHERRY BURROW, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A MEMBER OF THE STATE BOARD OF EDUCATION; JIM COOPER, INDIVIDUALLY AND IN HIS OFFICIAL | |

SLIP OPINION

CAPACITY AS A MEMBER OF THE STATE BOARD OF EDUCATION; BRENDA GULLETT, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A MEMBER OF THE STATE BOARD OF EDUCATION; SAMUEL LEDBETTER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE STATE BOARD OF EDUCATION; ALICE WILLIAMS MAHONEY, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A MEMBER OF THE STATE BOARD OF EDUCATION; TOYCE NEWTON, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A MEMBER OF THE STATE BOARD OF EDUCATION; VICKI SAVIERS, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A MEMBER OF THE STATE BOARD OF EDUCATION; RICHARD WEISS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION; MAC DODSON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE ARKANSAS DEVELOPMENT FINANCE AUTHORITY; ROBERT MOORE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SPEAKER OF THE HOUSE OF REPRESENTATIVES; AND PAUL BOOKOUT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS PRESIDENT PRO TEMPORE OF THE SENATE

APPELLEES

**KAREN R. BAKER, Associate Justice**

SLIP OPINION

The Deer/Mt. Judea School District (DMJ) appeals from the decision of the Pulaski County Circuit Court. On appeal, DMJ asserts that the circuit court erred on three points: (1) in ruling that DMJ's claims were barred by res judicata; (2) in striking only the date ranges of section 31 of Act 269 of 2010; and (3) in striking its amended and supplemental complaint. Beebe and the other appellees ("Beebe") have also filed a motion to dismiss the appeal, which we ordered passed until the case was submitted by letter order dated March 28, 2013. We deny the motion to dismiss, affirm in part and reverse and remand in part on the first point, hold that the second point is moot, and affirm on the third point.

## I. *Facts and Procedural History*

The current appeal has a long and complex history of litigation in circuit court and this court. The following is a summary of the procedural history and current posture of the case.

The appeal arises from a school-funding dispute. DMJ operates two kindergarten through twelfth-grade campuses in Newton County and serves approximately 360 students. On December 3, 2010, DMJ filed an action on its own behalf and on behalf of its taxpayers to enjoin state actions in violation of state law and the Arkansas Constitution. In its complaint, DMJ alleged that the State failed to conduct adequacy studies in compliance with Arkansas Code Annotated section 10-3-2102 (Supp. 2007) in 2008 and 2010, and to make necessary adjustments to maintain an education system in compliance with article XIV, section 1 and article II, sections 2, 3, and 18 of the Arkansas Constitution. DMJ also claimed that section 32 of Act 293 of 2010 is local or special legislation in violation of amendment 14 to the Arkansas Constitution, as it provided extra funding to only one school district. For ease

3

SLIP OPINION

of reference, throughout this opinion, the claim regarding adequacy studies and adjustments will be referred to as "the adequacy claim" and the claim regarding local or special legislation will be referred to as "the special-and-local-legislation claim."

Beebe filed a motion to dismiss the complaint on January 28, 2011, asserting that DMJ's claims were barred by res judicata. On March 17, 2011, the circuit court held a hearing on Beebe's motion to dismiss. At the hearing, the circuit judge stated from the bench that he would grant Beebe's motion to dismiss as to the adequacy claim. On April 11, 2011, DMJ filed a motion for voluntary dismissal without prejudice as to the special-and-local-legislation claim, so as to "facilitate an immediate appeal." The circuit court entered orders the next day dismissing both of DMJ's claims. The adequacy claim was dismissed because it was precluded by previous school-funding cases. The special-and-local-legislation claim was dismissed pursuant to DMJ's voluntary nonsuit of the claim. DMJ filed a timely notice of appeal of the *Beebe* case (NO. 60-CV-10-6936), which now consisted of only the adequacy claim, on April 14, 2011.

On March 1, 2012, this court dismissed the appeal of the *Beebe* case for lack of a final appealable order. *Deer/Mt. Judea Sch. Dist. v. Beebe*, 2012 Ark. 93. We held that the nonsuit of the special-and-local-legislation claim did not operate to make the April 12, 2011 order final because it could be refiled. The special-and-local-legislation claim, in fact, had been refiled on June 1, 2011, in the Pulaski County Circuit Court against Dr. Thomas W. Kimbrell

(the *Kimbrell* case, NO. 60-CV-11-2677).[1]

After this court dismissed the appeal, DMJ filed a motion to consolidate the *Beebe* case with the *Kimbrell* case in circuit court. The circuit court granted this motion over the Kimbrell's objection.

DMJ filed a motion for summary judgment on March 29, 2012, regarding the *Kimbrell* case. The circuit court heard oral arguments on the motion on August 16, 2012, and held a second hearing on November 1, 2012. DMJ filed an amended and supplemental complaint on November 1, 2012, which included both the adequacy claim and the special–and–local–legislation claim. The circuit court entered an order on December 11, 2012, granting the motion for summary judgment and severing the date restrictions in section 31 of Act 269 of 2010.

On January 22, 2013, the circuit court entered an order denying DMJ's motion for reconsideration of the order to dismiss filed April 12, 2011, striking DMJ's amended and supplemental complaint, and granting a stay on the enforcement of the judgment during the pendency of this appeal. DMJ then filed a notice of appeal for both the *Beebe* and the *Kimbrell* cases on January 22, 2013.

Beebe filed a motion to dismiss the appeal on March 14, 2013, alleging that the notice of appeal in the *Beebe* case was not timely filed. We chose to take the motion with the case.

In summary, DMJ filed a complaint alleging two claims against Beebe. DMJ then

---

[1]This claim was also filed against the Melbourne School District, but this party was dismissed without prejudice on November 21, 2011.

SLIP OPINION

SLIP OPINION

voluntarily nonsuited the special-and-local-legislation claim so that it could immediately appeal the adequacy claim in the *Beebe* case. DMJ brought the special-and-local-legislation claim as a separate case, the *Kimbrell* case. This court then dismissed the appeal of the *Beebe* case, holding that there was a lack of finality. After we dismissed the *Beebe* case on appeal, DMJ moved to consolidate the *Beebe* case and the *Kimbrell* case, and the motion was granted by the circuit court. After the circuit court decided the *Kimbrell* case and the *Beebe* case, DMJ filed a notice of appeal for both cases. These appeals, and Beebe's motion to dismiss the appeal of the *Beebe* case, are now before us.

We note that, while the cases were consolidated at the circuit-court level, they have not been consolidated on appeal, nor has a motion to do so been filed. This court may consolidate cases for appeal on its own motion under Arkansas Rule of Appellate Procedure–Civil 3(c) (2013). We hereby consolidate these cases to avoid unnecessary delay.

While we consolidate these cases for appeal, they are still separate cases. Consolidation does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in the other. *Dwiggins v. Elk Horn Bank & Trust Co.*, 364 Ark. 344, 219 S.W.3d 181 (2005). Consolidated cases remain joint and separate entities. *St. Louis Sw. Ry. Co. v. Pennington*, 261 Ark. 650, 553 S.W.2d 436 (1977). Because these remain separate cases on appeal, we will address the issues relating to each case separately.

## II. *The Beebe Case (NO. 60-CV-10-6936)*

First, we address the matters in the appeal relating to the *Beebe* case. DMJ asserts that the circuit court erred in granting Beebe's motion to dismiss based on the claim-preclusion

6

SLIP OPINION

aspect of res judicata. DMJ also asserts that the circuit court erred in striking its amended and supplemental complaint, which was filed in the *Beebe* case. First, however, we must take up the motion to dismiss the appeal in the *Beebe* case.

## A. Beebe's Motion to Dismiss

Beebe has moved to dismiss the appeal as to the *Beebe* case. In that motion, Beebe asserts that the appeal was not timely filed, as the *Beebe* case became final when the *Kimbrell* case was filed. Beebe further asserts that this court erred in ruling that the appeal in the *Beebe* case was not final. We hold that DMJ's notice of appeal was timely and deny the motion to dismiss.

Beebe asserts that, under *Mountain Pure LLC v. Affiliated Foods Southwest, Inc.*, 366 Ark. 62, 233 S.W.3d 609 (2006), because DMJ filed the special-and-local-litigation claim as a separate suit, the *Beebe* case became final upon the filing of the *Kimbrell* case and the notice of appeal was not timely in the *Beebe* case. This argument is founded on a misinterpretation of our holding in *Mountain Pure*. We did not hold in *Mountain Pure* that the filing of a nonsuited claim in a separate case made the remaining summary-judgment orders final. Instead, we held that those other claims remained "in limbo" until all outstanding claims were either finally adjudicated or were otherwise no longer a bar to finality and a final order was entered.

Under *Mountain Pure*, jurisdiction vests in the circuit court until such time as any outstanding claims are properly adjudicated or are no longer a bar to finality and a final order is entered. Thus, an order does not become final when the nonsuited claims are refiled in a

SLIP OPINION

separate case, as Beebe contends. A final order must still be entered in the record of the case for the remaining claims to be appealable.

Here, the final order entered in the *Beebe* case was the denial of the motion for reconsideration. As in *Mountain Pure*, at the time the order denying the motion for reconsideration was entered, all nonsuited claims had been finally adjudicated and were no longer a bar to finality. Therefore, the order denying the motion for reconsideration was the final order in the case, and DMJ has properly appealed from that order, thereby bringing up for review the intermediate orders.

## B. Whether the Circuit Court Erred in Granting Beebe's Motion to Dismiss Based on Res Judicata

For its first point on appeal, DMJ asserts that the circuit court erred in dismissing DMJ's claims as to the *Beebe* case. The circuit court ruled that the claims were barred by res judicata, as the claims and issues had been adjudicated in *Lake View School District No. 25 v. Huckabee* (*Lake View 2007*), 370 Ark. 139, 257 S.W.3d 879 (2007).

A history of our decisions in school-funding cases is required for an understanding of DMJ's argument on appeal. In 1994, the Lake View School District filed suit against the State alleging that the state's school-funding system violated the equality provisions and the education article of the Arkansas Constitution. The circuit court ruled in favor of Lake View. We rejected an appeal of this ruling as it was not a final, appealable order. *Tucker v. Lake View Sch. Dist. No. 25 of Phillips Cnty.* (*Lake View 1996*), 323 Ark. 693, 917 S.W.2d 530 (1996).

The General Assembly repealed the school-funding scheme in 1995 and replaced it. Lake View filed a complaint and show-cause petition asserting that the new funding system

violated the equality provisions and the education article of the Arkansas Constitution. The circuit court dismissed the complaint and show-cause petition, ruling that they were moot because amendment 74 had changed the standard for the school-funding system and allowed funding variances among the school districts. The circuit court also stated that the same analysis applied to the legislation passed by the General Assembly and added that the complaint and show-cause petition should be dismissed for failure to state a claim because the 1995 and 1997 legislative acts are presumed constitutional, and no facts were alleged supporting lack of a rational basis for those acts. We disagreed and remanded the case for trial. *Lake View Sch. Dist. No. 25 of Phillips Cnty. v. Huckabee*, 340 Ark. 481, 10 S.W.3d 892 (2000).

On remand, the circuit court ruled that the school-funding system remained unconstitutional. We agreed, citing our holding in *DuPree v. Alma School District No. 30*, 279 Ark. 340, 651 S.W.2d 90 (1983), that equal opportunity is the touchstone for a constitutional system and not merely equalized revenues. We stated as follows:

> It is the State's responsibility, first and foremost, to develop forthwith what constitutes an adequate education in Arkansas. It is, next, the State's responsibility to assess, evaluate, and monitor, not only the lower elementary grades for English and math proficiency, but the entire spectrum of public education across the state to determine whether equal educational opportunity for an adequate education is being substantially afforded to Arkansas' school children. It is, finally, the State's responsibility to know how state revenues are being spent and whether true equality in opportunity is being achieved. Equality of educational opportunity must include as basic components substantially equal curricula, substantially equal facilities, and substantially equal equipment for obtaining an adequate education. The key to all this, to repeat, is to determine what comprises an adequate education in Arkansas. The State has failed in each of these responsibilities.

*Lake View Sch. Dist. No. 25 of Phillips Cnty. v. Huckabee*, 351 Ark. 31, 79, 91 S.W.3d 472, 500 (2002). We then stayed the issue of the mandate in order to give the State time to correct the

9

SLIP OPINION

constitutional disability. *Id.*

We recalled the mandate again in 2004, appointed masters, and released the mandate later that year based on the masters' report. *Lake View Sch. Dist. No. 25 of Phillips Cnty. v. Huckabee*, 358 Ark. 137, 189 S.W.3d 1 (2004). We once again recalled the mandate the next year, appointed masters, and stayed the mandate until December 1, 2006. We then stayed the mandate a further 180 days. *Lake View Sch. Dist. No. 25 of Phillips Cnty. v. Huckabee*, 368 Ark. 231, 243 S.W.3d 919 (2006).

Finally, in 2007, this court adopted the masters' reports and released the mandate. *Lake View 2007*, 370 Ark. 139, 257 S.W.3d 879. We stated the following:

> We hold that the General Assembly has now taken the required and necessary legislative steps to assure that the school children of this state are provided an adequate education and a substantially equal educational opportunity. A critical component of this undertaking has been the comprehensive system for accounting and accountability, which has been put in place to provide state oversight of school-district expenditures. What is especially meaningful to this court is the Masters' finding that the General Assembly has expressly shown that constitutional compliance in the field of education is an ongoing task requiring constant study, review, and adjustment. In this court's view, Act 57 of the Second Extraordinary Session of 2003, requiring annual adequacy review by legislative committees, and Act 108 of the Second Extraordinary Session of 2003, establishing education as the State's first funding priority, are the cornerstones for assuring future compliance.

*Id* at 145–46, 257 S.W.3d at 883.

DMJ's complaint alleged that the General Assembly had no rational basis for not applying some of the recommendations in the Picus report, a report which created a model for the state's system of education. The Picus report was developed in 2003 and recalibrated in 2006. The circuit court ruled that DMJ's claims could have been brought in the *Lake View* cases, and thus were precluded by res judicata. DMJ asserts that the circuit court erred in

SLIP OPINION

ruling that the claims were precluded in two ways: (1) that the constitutionality of the educational system requires "constant study, review, and adjustment," and (2) that the challenged acts and omissions of the General Assembly happened after *Lake View 2007* had been decided.

In reviewing a circuit judge's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Baptist Health v. Murphy*, 2010 Ark. 358, 373 S.W.3d 269. In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id*. Our standard of review for the granting of a motion to dismiss is whether the circuit judge abused his or her discretion. *Dockery v. Morgan*, 2011 Ark. 94, 380 S.W.3d 377. Res judicata means that "a thing or matter has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction." *Baptist Health*, 2010 Ark. 358, 373 S.W.3d 269. Res judicata consists of two facets, one being issue preclusion and the other claim preclusion. The claim–preclusion aspect of res judicata bars relitigation of a subsequent suit when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Id*. Res judicata bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated. *Id*. Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises

new legal issues and seeks additional remedies. *Id*.

Collateral estoppel, the issue-preclusion facet of res judicata, bars relitigation of issues of law or fact previously litigated, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question and that the issue was essential to the judgment. *Morgan v. Turner*, 2010 Ark. 245, 368 S.W.3d 888. To apply collateral estoppel, the following elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the issue must have been determined by a valid and final judgment, and (4) the determination must have been essential to the judgment

In *Lake View 2007*, this court emphasized the masters' finding that constitutional compliance in the field of education is an ongoing task requiring constant study, review, and adjustment.  DMJ contends that this means the General Assembly has a continuous, constitutional duty to improve the school-funding system, which it asserts the General Assembly has not done.  However, many of DMJ's complaints stem from areas that were at issue or could have been brought in the previous school-funding cases.

This court held in *Lake View 2007* that the system of public-school financing was in constitutional compliance and issued the mandate.  In issuing the mandate, this court tacitly decided that it would no longer look over the shoulder of the General Assembly to ensure that the school-funding scheme was constitutional.  To read *Lake View 2007* as DMJ suggests would "disparage the work of the General Assembly and cast the role of this court into that of a brooding superlegislature." *Lake View Sch. Dist. No. 25 of Phillips Cnty. v. Huckabee*, 358

SLIP OPINION

Ark. 137, 189 S.W.3d 1 (2004) (mandate recalled by *Lake View Sch. Dist. No. 25 of Phillips Cnty. v. Huckabee (Lake View 2005)*, 362 Ark. 520, 210 S.W.3d 28 (2005)).  DMJ asks this court to maintain our jurisdiction over the school-funding cases to make sure that the General Assembly is continually adjusting the school-funding scheme to maintain its constitutionality. This we will not do.

DMJ also contends that the circuit court erred in granting the State's motion to dismiss because the acts or omissions complained of occurred after this court had issued the mandate in *Lake View 2007*.  We agree that not all of DMJ's claims in the *Beebe* case are barred by res judicata, as several of them involve acts or omissions that occurred after this court had released the mandate in *Lake View 2007*.  However, DMJ's claims that arise out of whether the General Assembly has adopted the recommendations of the Picus report are barred by the claim-preclusion aspect of res judicata, as DMJ's claims could have been litigated in the *Lake View* cases.

DMJ claims (1) that the adequacy reports filed in 2008 and 2010, as required by Arkansas Code Annotated section 10-3-2102 (Repl. 2012), have failed to comply with that act; (2) that cost-of-living adjustments (COLAs) were determined based on what funds were available, not by what funds were necessary; (3) that there is no rational basis to support the State's method of funding student transportation; (4) that DMJ's facilities are unequal and inadequate; (5) that the way the State funds small, remote schools is unconstitutional; (6) that the State has failed to require schools to spend NSLA funding on programs that help struggling students as recommended by the Picus report; (7) that the State has not required

SLIP OPINION

implementation of an effective professional-development system as recommended by the Picus report; (8) that the State must make adjustments to address the intrastate teacher-salary disparity; and (9) that the State must make adjustments to the way it pays teacher retirement.

DMJ asserts that the adequacy reports filed in 2008 and 2010, as required by Arkansas Code Annotated section 10-3-2102 have failed to comply with that Act. DMJ further asserts that the students of this State are not receiving a substantially equal opportunity for an adequate education based on alleged inequalities in funding.

Arkansas Code Annotated section 10-3-2102 states as following:

> (a) During each interim, the House Committee on Education and the Senate Committee on Education shall meet separately or jointly, as needed, to:
>> (1) Assess, evaluate, and monitor the entire spectrum of public education across the State of Arkansas to determine whether equal educational opportunity for an adequate education is being substantially afforded to the school children of the State of Arkansas and recommend any necessary changes;
>> (2) Review and continue to evaluate what constitutes an adequate education in the State of Arkansas and recommend any necessary changes;
>> (3) Review and continue to evaluate the method of providing equality of educational opportunity of the State of Arkansas and recommend any necessary changes;
>> (4) Evaluate the effectiveness of any program implemented by a school, a school district, an education service cooperative, the Department of Education, or the State Board of Education and recommend necessary changes;
>> (5) Review the average teacher salary in the State of Arkansas in comparison to average teacher salaries in surrounding states and member states of the Southern Regional Education Board and make recommendations for any necessary changes to teacher salaries in the State of Arkansas established by law;
>> (6) Review and continue to evaluate the costs of an adequate education for all students in the State of Arkansas, taking into account cost-of-living variances, diseconomies of scale, transportation variability, demographics, school districts with a disproportionate number of

students who are economically disadvantaged or have educational disabilities, and other factors as deemed relevant, and recommend any necessary changes;

(7) Review and continue to evaluate the amount of per–student expenditure necessary to provide an equal educational opportunity and the amount of state funds to be provided to school districts, based upon the cost of an adequate education and monitor the expenditures and distribution of state funds and recommend any necessary changes;

(8) Review and monitor the amount of funding provided by the State of Arkansas for an education system based on need and the amount necessary to provide an adequate educational system, not on the amount of funding available, and make recommendations for funding for each biennium.

....

(f) The study for subdivisions (a)(1)–(4) of this section shall be accomplished by:

(1) Reviewing a report prepared by the Division of Legislative Audit compiling all funding received by public schools for each program;

(2) Reviewing the curriculum frameworks developed by the Department of Education;

(3) Reviewing the Arkansas Comprehensive Testing, Assessment, and Accountability Program, § 6-15-401 et seq.;

(4) Reviewing fiscal, academic, and facilities distress programs;

(5) Reviewing the state's standing under the No Child Left Behind Act of 2001, 20 U.S.C. § 6301 et seq.;

(6) Reviewing the Arkansas Comprehensive School Improvement Plan process; and

(7) Reviewing the specific programs identified for further study by the House Committee on Education and the Senate Committee on Education.

(g)     (1) The study for subdivision (a)(5) of this section shall be accomplished by comparing the average teacher salary in Arkansas with surrounding states and Southern Regional Education Board member states, including without limitation:

(A) Comparing teacher salaries as adjusted by a cost of living index or a comparative wage index;

(B) Reviewing the minimum teacher compensation salary schedule; and

(C) Reviewing any related topics identified for further study by the House Committee on Education and the Senate Committee on Education.

(2) Depending on the availability of National Education Association data on teacher salaries in other states, the teacher salary comparison may be

SLIP OPINION

prepared as a supplement to the report after September 1.

(h) The study for subdivision (a)(6) of this section shall be accomplished by reviewing:

(1) Expenditures from:

(A) Isolated school funding;

(B) National school lunch student funding;

(C) Declining enrollment funding;

(D) Student growth funding;

(E) Special education funding;

(2) Disparities in teacher salaries; and

(3) Any related topics identified for further study by the House Committee on Education and the Senate Committee on Education.

(i) The study for subdivision (a)(7) of this section shall be accomplished by:

(1) Completing an expenditure analysis and resource allocation review each biennium; and

(2) Reviewing any related topics identified for further study by the House Committee on Education and the Senate Committee on Education.

(j) The study for subdivision (a)(8) of this section shall be accomplished by:

(1) Using evidence-based research as the basis for recalibrating as necessary the state's system of funding public education;

(2) Adjusting for the inflation or deflation of any appropriate component of the system of funding public education every two (2) years;

(3) Reviewing legislation enacted or rules promulgated during the biennium covered by the study to determine the impact of the legislation and rules on educational adequacy-related public school costs; and

(4) Reviewing any related topics identified for further study by the House Committee on Education and the Senate Committee on Education.

Under our standard of review, we treat DMJ's allegations that the Joint Committee has not complied with Arkansas Code Annotated section 10-3-2102 as true. Because the adequacy reports and evaluations complained of were filed after we had released the mandate in *Lake View 2007*, these claims are not barred by res judicata. Therefore, the circuit court abused its discretion in granting Beebe's motion to dismiss as to these claims.

DMJ contends that COLAs in 2009 and 2011 are based on what funds are available,

not what funds are needed. The "Purpose" section of Act 57 makes it clear that the amount of funding given to schools shall be based on need and not funds available. *See Lake View 2005*, 362 Ark. 520, 210 S.W.3d 28. These adjustments were made after this court released the mandate; therefore, these claims are not barred by res judicata. The circuit court abused its discretion in dismissing these claims.

DMJ asserts that there is no rational basis to support the State's method of funding the transportation of students. While this issue was addressed in the *Lake View* cases, the 2008 and 2010 adequacy reports recommended that an additional line of funding be added to provide for those school districts whose transportation costs are not covered by the amount of funding provided to them by the current line item. The General Assembly chose not to adopt these recommendations. Because these acts or omissions by the General Assembly occurred after we had released the mandate in *Lake View 2007*, they are not barred by res judicata.

DMJ asserts that its facilities are inequitable and inadequate because it does not receive the funding it needs to maintain and repair those facilities. In *Lake View 2005*, we reviewed the masters' findings with respect to facilities. They concluded that the financial responsibility required for a school district to enter into a partnership with the State for construction and repairs would be so great that many school districts would be unable to raise the required funds and, thus, would be forced to forgo needed construction and repairs. In *Lake View 2007*, this court cited the masters' finding that Arkansas Code Annotated section 6-20-2502(1)(B) (Repl. 2007) would provide some state assistance to every school district based on actual need for facilities in the individual school districts as well as the school district's ability

17

to pay. DMJ contends that the State has not provided this assistance as contemplated, as it is still unable to raise the required funds to enter into a partnership with the State for construction and repairs. Taking these allegations as true, this claim is not barred by res judicata. It would not have been possible to bring a complaint about the effects of Act 727 of 2007, which amended section 6–20–2502(1)(B), before we issued our mandate in *Lake View 2007*.

DMJ alleges that the way that the State funds small, remote schools is unconstitutional because the funding amounts given to isolated schools is not rationally related to the needs of those schools. DMJ states that the 2006 Adequacy Report noted this and recommended that Arkansas Code Annotated sections 6-20-603 and –604, which control this funding, be rewritten. DMJ contends that the General Assembly rejected this recommendation, and the issue has not been addressed in subsequent reports.[2] As this recommendation was made in the 2006 adequacy report, prior to our decision in *Lake View 2007*, DMJ's claim is barred by res judicata.

DMJ contends that the adequacy reports show that school districts have failed to use National School Lunch Act (NSLA) funds as recommended by the Picus report. The recommendations in the Picus report were implemented or rejected before we released the mandate in *Lake View 2007* cases and could have been litigated in the school-funding cases prior to that case. Therefore, DMJ is precluded from asserting this claim.

---

[2]DMJ admits that section 6–20–604 has been rewritten, but only to allow a specific school district to gain isolated school funding. This point is addressed below in the *Kimbrell* case.

18

SLIP OPINION

Similarly, DMJ asserts that the State has not required implementation of an effective professional development system as recommended by the Picus report, and that the State must make adjustments to address the intrastate teacher-salary disparity and the way it pays teacher retirement. Each of DMJ's arguments on these claims is based on whether the General Assembly has implemented or rejected a recommendation made in the Picus report. Because these claims could have been litigated in the *Lake View* cases, DMJ is precluded from bringing them.

In summary, DMJ contends that several acts or omissions of the General Assembly violate the Arkansas Constitution. We treat these allegations as true. Some of the acts or omissions complained of occurred after we had released the mandate in *Lake View 2007*. The circuit court abused its discretion in dismissing these claims. However, those acts or omissions that were brought or could have been brought in the previous school-funding cases are barred by res judicata, and the circuit court did not err in dismissing them.

### C. Whether the Circuit Court Erred in Striking the Amended and Supplemental Complaint

DMJ's second issue on appeal in this case is whether the circuit court erred in striking the amended and supplemental complaint. We affirm.

On November 1, 2012, DMJ filed an amended and supplemental complaint. The State filed a motion to strike the complaint, arguing that it would be prejudicial and would cause the disposition of the case to be unduly delayed. The circuit court agreed with the State and granted the motion to strike. DMJ asserts that the circuit court abused its discretion in striking the amended and supplemental complaint.

SLIP OPINION

Rule 15 of the Arkansas Rules of Civil Procedure encourages liberal amendments of pleadings. *Dupree v. Twin City Bank*, 300 Ark. 188, 777 S.W.2d 856 (1989). Rule 15(a) states in pertinent part as follows:

> [A] party may amend his pleadings at any time without leave of the court. Where, however, upon motion of an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding.

The circuit court is vested with broad discretion in allowing or denying amendments. *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, ___ S.W.3d ___. While Rule 15 allows for liberal amendments of pleadings, we adhere to our well-established standard of review that we will not reverse a circuit court's decision allowing or denying amendments to pleadings absent a manifest abuse of discretion. *Id.*

The circuit court found that prejudice would result and that the disposition of the case would be unduly delayed if DMJ were allowed to amend and supplement its complaint. The amended and supplemental complaint was filed on November 1, 2012, the same day as the second hearing on DMJ's motion for summary judgment. Further, the amended and supplemental complaint consisted of ninety-six pages of complaint and 1,337 pages of exhibits.

DMJ contends that the State cannot be prejudiced by supplementing the claim. However, prejudice is not necessary where the circuit court finds that the disposition of the case would be unduly delayed by the filing of an amendment. Here, an amended and supplemental complaint was filed on the day of the second hearing on a motion for summary judgment that decided the case. Allowing the amended and supplemental complaint at that

late date could unduly delay the disposition of the case. Therefore, the circuit court did not abuse its discretion in striking the amended and supplemental complaint.

### III. *The Kimbrell Case (NO. 60-CV-11-2677)*

Next, we address the matters in the appeal relating to the *Kimbrell* case. DMJ asserts that the circuit court erred in severing only the date restrictions in section 31 of Act 269 of 2010. DMJ's contends that severing only the date restriction in section 31 of Act 269 of 2010 does not render the statute constitutional. We hold that this point is moot.

The General Assembly amended Arkansas Code Annotated section 6–20–604 (e) (Supp. 2009) with section 32 of Act 293 of 2010. The statute reads as follows:

> (e)(1) A Except as provided in subdivision (e)(2) of this section, a school district meeting the requirements of subsection (b) of this section shall receive an amount equal to ten percent (10%) of the foundation funding received by the school district under § 6–20–2305(a)(2) based on the three-quarter average daily membership of the isolated school area under § 6–20–2305(a)(2) if the school district has school facilities open for kindergarten through grade twelve (K–12) in one (1) or more isolated schools meeting the requirements of subsection (b) of this section.
> (2) A school district shall receive an amount equal to ten percent (10%) of the foundation funding received by the school district under § 6–20–2305(a)(2) based on the three-quarter average daily membership of the isolated school area under § 6–20–2305(a)(2) if:
> (A) The school district has school facilities serving students in any grade in kindergarten through grade twelve (K–12) in one (1) or more isolated schools meeting the requirements of subsection (b) of this section; and
> (B) The school district closed an isolated facility serving students in grades seven (7) through twelve (12) between January 1, 2008, and July 1, 2008.

DMJ contended below that the date restriction rendered this provision of the Act "local or special" legislation as it granted funding to only one school district, the Melbourne School District. The circuit court agreed and ruled that the statute was unconstitutional under amendment 14. The circuit court further ruled that severing the date range was consistent

21

with the purposes of the act and would make the statute constitutional and ordered the date range struck from the statute.

DMJ appealed, contending that all of section 32 should be stricken from the statute. DMJ asserts that the sole purpose of section 32 was to provide Melbourne School District with funding, and provide funding to no other school district. As this purpose was unconstitutional, DMJ contends that the entirety of section 32 should be struck as unconstitutional.

This year, the General Assembly enacted section 33 of Act 1073 of 2013 (effective August 16, 2013), which deleted the date range that was struck by the circuit court. Both DMJ and the State conceded at oral argument that DMJ's claim is now moot. As a general rule, the appellate courts of this state will not review issues that are moot because to do so would be to render an advisory opinion. *Lott v. Langley*, 2013 Ark. 247. Generally, a case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. *Id.*

We have, however, recognized two exceptions to the mootness doctrine. *Id.* The first exception involves issues that are capable of repetition, yet evading review, and the second exception concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Id.* The claim of special and local legislation will not prevent future litigation if addressed, and if this issue occurs again, it will not evade review. Accordingly, neither of the exceptions apply here.

Because DMJ's claims in the *Kimbrell* case are moot and neither of the exceptions apply, we hereby dismiss the appeal of this case.

22

SLIP OPINION

IV. *Conclusion*

Because DMJ's notice of appeal was timely filed, we deny Beebe's motion to dismiss. We hold that the circuit court erred in dismissing DMJ's claims from the *Beebe* case relating to the adequacy reports and evaluations, COLAs, transportation funding, and facilities funding based on res judicata. Therefore, we reverse and remand those claims to the circuit court. However, we affirm the circuit court's ruling on res judicata as to DMJ's claims relating to education funding in the *Beebe* case, which were or could have been litigated in the previous school-funding cases. We also hold that the circuit court did not abuse its discretion in striking DMJ's amended complaint. Finally, we hold that the appeal in the *Kimbrell* case is moot.

Affirmed in part; reversed and remanded in part; moot in part; motion to dismiss denied.

CORBIN, J., dissents in part and concurs in part.

**DONALD L. CORBIN, Justice, dissenting in part and concurring in part.** The appeal in the *Beebe* case is untimely, and I therefore respectfully dissent from the majority's conclusion otherwise. I would grant the State's motion to dismiss the appeal in *Beebe*, albeit for slightly different reasoning than argued in the State's motion. Although the specific argument raised by the State is not well taken, the general idea of the untimeliness of the *Beebe* appeal gives me concern. This court's appellate jurisdiction requires a timely appeal from a final order; we are obliged to raise jurisdictional issues on our own.

Relying on *Mountain Pure LLC v. Affiliated Foods Southwest, Inc.*, 366 Ark. 62, 233 S.W.3d 609 (2006), the State based its motion on the contention that the April 12, 2011 order

entered in the *Beebe* case, dismissing the adequacy claim as barred by res judicata, became final on June 1, 2011, when the Deer/Mt. Judea School District (DMJ) refiled in the *Kimbrell* case the same local-and-special-legislation claim it had nonsuited in the *Beebe* case. The majority correctly concludes that *Mountain Pure* did not so hold. However, I cannot agree with the majority's further analysis and conclusion that the *Beebe* appeal is timely as from the January 22, 2013 order denying reconsideration of the April 2011 order. I simply cannot agree that an order denying reconsideration of a nonfinal order is a final order. Even if I could so agree, however, I would conclude that such an order was not timely obtained in this case.

Once this court issued the opinion in the first appeal of this case, holding that the nonsuit of the local-and-special-legislation claim was a bar to the finality of the April 2011 order, the circuit court retained jurisdiction "until such time as the remaining claims were properly adjudicated and a final order was entered." *Mountain Pure*, 366 Ark. at 69, 233 S.W.3d at 614. However, when nonsuited claims are timely refiled and "still being adjudicated" in another case, those claims "[are] no longer a bar to the finality" of the previously entered orders because "[a]s those claims have once been dismissed and have been refiled, they cannot be filed a third time. Ark. R. Civ. P. 41." *Id*. at 69, 233 S.W.3d at 614. Because DMJ had refiled the local-and-special-legislation claim as a wholly separate case in *Kimbrell* while the first *Beebe* appeal was pending, and because there were only two claims alleged from the start in the *Beebe* case,[3] there were no remaining claims in the *Beebe* case for

---

[3]In *Mountain Pure*, there were several remaining claims. Some were refiled and still being adjudicated in federal court and were no longer a bar to finality, while others were refiled in state court and then dismissed with prejudice. I reject DMJ's argument that *Mountain Pure* can be distinguished on the basis that the nonsuited claims that were still being adjudicated were refiled in

the circuit court to properly adjudicate. Thus, according to *Mountain Pure*, there were no longer any bars to the finality of the April 2011 order.

In accordance with *Mountain Pure*, after the first appeal in the present case, all that remained within the circuit court's jurisdiction in *Beebe* was to enter a final order on the adequacy claim that it had previously dismissed in April 2011 as being barred by res judicata. It was incumbent upon DMJ to obtain a final order forthwith, as there were no other remaining claims in the *Beebe* case. The majority is of the view that there is no time constraint here, and that the trial court could retain jurisdiction of the *Beebe* case indefinitely while the separate *Kimbrell* case was being adjudicated simply to enter a final order in the *Beebe* case upon the final adjudication of the *Kimbrell* case. I, however, am of the view that such indefiniteness results in undue confusion and delay of the separate cases, whether consolidated or not, not to mention prejudice and perhaps in some cases even miscarriages of justice. I am also of the view that some time limitation should be placed on a litigant's ability to indefinitely manipulate the rules of civil procedure to unnecessarily complicate a case.

While a litigant has an absolute right pursuant to Rule 41 to take a voluntary nonsuit and then refile a claim, be it in the same case or in a different case in either state or federal court, I favor an approach that places the burden of timely winding up the loose ends that inevitably result from the taking of a voluntary nonsuit on the party exercising such right. Indeed, such an approach is at least intimated as within the spirit of Rule 41(b), where there is a one-year limitation and resulting involuntary dismissal for the failure to prosecute a claim.

federal court, rather than in state court as in the present case. Rule 41(a)(2) expressly provides that the two-dismissal rule operates regardless of which courts, state or federal, are involved.

Moreover, contrary to the majority's view of *Mountain Pure*, I do not read that case to require such indefiniteness as to the circuit court's retention of jurisdiction to enter a final order. *Mountain Pure* plainly states that when a nonsuited claim is timely refiled in another case and is still being adjudicated, that nonsuited claim is no longer a bar to the finality of an order on the other claims in the original case because the nonsuited and refiled claim cannot be refiled a third time pursuant to Rule 41. In *Mountain Pure*, however, in addition to the nonsuited claims that were refiled and ongoing in federal court, there were also some nonsuited claims that were refiled and dismissed with prejudice in state court, and, still, unlike in the present case, there was yet an additional nonsuited claim that remained within the original case. The plaintiff in *Mountain Pure* chose to refile that claim via an amended complaint within the original case. And the trial court in *Mountain Pure* thus retained jurisdiction until that claim was finally adjudicated and an appeal was taken. I simply do not read *Mountain Pure* as allowing the trial court to retain jurisdiction of a case until the refiled and ongoing nonsuited claims are finally adjudicated in a separate case. As noted, on these facts, when there are no longer any bars to finality, I would conclude that DMJ bore the burden of obtaining a final order forthwith and its failure to do so until the *Kimbrell* case was finally adjudicated results in an untimely appeal in the *Beebe* case.

Even assuming arguendo that, as the majority concludes, an order denying reconsideration of a nonfinal order somehow results in a final order, then I am of the view that there should be some time restraint on the motion for reconsideration. Thus, as applied to the present case, if there was to be a timely motion for reconsideration of the April 2011 order,

it had to be filed at the very latest within the 90-day time constraints of Rule 60 of the Arkansas Rules of Civil Procedure. As I would apply the majority's conclusion to this case, then my view is that such a motion for reconsideration must have been filed with the trial court within 90 days of our mandate in the first appeal. The date of the mandate is the operative date on these facts because that is the point at which both the April 2011 order no longer had any bar to finality—due to the refiling in the separate *Kimbrell* case of the claim that was the bar to finality in *Beebe*—and the trial court was reinvested with jurisdiction to enter a final order. Our opinion was delivered on March 1, 2012, and our mandate issued on March 20, 2012. DMJ filed its motion for reconsideration of the adequacy claim in the *Beebe* case on December 7, 2012, well outside the 90-day limitation that I propose. I can therefore follow the majority's opinion to no other conclusion than to grant the State's motion to dismiss the *Beebe* appeal as untimely.

As I have concluded that the appeal in the *Beebe* case should be dismissed as untimely, I would not reach the merits of the argument that the circuit court erred in dismissing the adequacy claim as barred by res judicata. I do note, however, my general agreement with this court's previous rejection of a res judicata argument raised by the State in a similar context:

> The District argues that the Parents' claims are barred by the doctrine of res judicata because "the issues surrounding the definition and determination of adequacy were fully litigated" in the *Lake View* litigation. Were this court to so hold, it would preclude any future challenge ever made to the constitutionality of the state's educational system. There is simply no merit to this argument by the District.

*Walker v. Ark. State Bd. of Educ.*, 2010 Ark. 277, at 18 n.6, 365 S.W.3d 899, 910 & n.6.

Finally, with respect to the *Beebe* case, I address the striking of the amended complaint.

According to Rule 2(a)(4) of the Arkansas Rules of Appellate Procedure–Civil, an order striking a pleading is an immediately appealable order. We have a timely notice of appeal from the order striking DMJ's amended complaint. Striking the amended complaint was not an abuse of discretion because the State would have been prejudiced by having to relitigate matters that were already final. Thus, even assuming that it was proper for the circuit court to have acted on the motion to strike in the *Beebe* case, to allow the amended complaint would have prejudiced the State; therefore, it was not an abuse of discretion to strike it.

As for the *Kimbrell* appeal, I agree with the majority's conclusion that the *Kimbrell* appeal is now moot, as the parties conceded in oral argument. Even absent that concession, the appeal would still be moot. While the current appeal was pending, the General Assembly amended the statute in question during the 2013 session to remove the date restriction. The amendment by the legislature occurred by way of Act 1073 of 2013, which became effective August 16, 2013. This Act made technical corrections to the school-funding statutes and specifically repealed the date restriction in the statute DMJ challenged on appeal. The amendment also achieves exactly the remedy provided by the circuit court in this case. The action of the legislature therefore renders moot the issue presented in this portion of the appeal. *See Ark. Dep't of Correction v. Williams*, 2009 Ark. 523, 357 S.W.3d 867. When a statute is amended while an appeal challenging the statute is pending, the amendment eliminates the controversy between the parties and renders the appeal moot. *Id.* As a general rule, this court does not review moot issues, as to do so would be to render an advisory opinion. *Warren Wholesale Co. v. McLane Co.*, 374 Ark. 171, 286 S.W.3d 709 (2008).

In sum, while I agree generally with the majority's conclusions on res judicata, I simply cannot agree that this court has jurisdiction to render such an opinion. The effect of the majority opinion is to hold our trial courts open indefinitely in the name of preventing piecemeal appeals. We have already significantly eroded our prohibition of piecemeal appeals by simply allowing a trial court to issue an adequate Rule 54(b) certificate. I see no reason then to blindly protect that principle in this case at the expense of the finality principle. I would prefer a resolution of this case that requires a litigant to promptly obtain a final order rather than allow that litigant to continue to cause even more confusion and delay and burden our courts at both the trial and appellate levels. While I consider myself sensitive and even sympathetic to the arguments raised by the school district in this case, I point out that my view of a dismissal of this appeal on jurisdictional grounds would not preclude the merits of the arguments here presented from being properly raised in future cases.

*John C. Fendley, Jr., P.A.*, by: *Clay Fendley*; and
*Lewellen & Associates*, by: *Roy C. "Bill" Lewellen*, for appellants.

*Dustin McDaniel*, Att'y Gen., by: *Scott P. Richardson*, Ass't Att'y Gen., for appellee.

SLIP OPINION